LITTON SYSTEMS, INC., et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

No. 76 Civ. 2512 (WCC).

United States District Court, S.D. New York.

July 9, 1985.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Howrey & Simon, Washington, D.C., for plaintiffs; Peter E. Flemming, Jr., New York City, William Simon, John Bodner, Jr., Francis A. O'Brien, Michael K. Brown, Washington, D.C., Theodore F. Craver, Larry L. Yetter, Litton Industries, Inc., Beverly Hills, Cal., of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants; Harvey Kurzweil, Raymond Brenner, David J. Ritchie, Peter H. Jacoby, New York City, of counsel.

## OPINION AND ORDER

### WILLIAM C. CONNER, District Judge:

In 1976, plaintiffs Litton Systems, Inc., *et al.* ("Litton") brought suit against defendants American Telephone and Telegraph Company, *et al.* ("AT & T") for violations of the federal antitrust laws. After years of pretrial proceedings and a five-month jury trial, I entered judgment in favor of Litton in the amount of $276,774,-729. The Court of Appeals for the Second Circuit unanimously affirmed that judgment, *Litton Systems, Inc. v. American Telephone and Telegraph Co.*, 700 F.2d

785 (2d Cir.1983), and the United States Supreme Court denied AT & T's petition for a writ of certiorari. —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984).

Litton now moves, pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, for an award of costs and attorney's fees for its successful defense of the judgment on appeal.[1] It calculates its costs at $288,646.85 and its attorney's fees at $1,496,564. It requests that I multiply this lodestar amount by a factor of 1.5 to 2.5.

I stress that Litton seeks only costs and fees incurred on appeal. In an Opinion and Order issued after the trial, I sanctioned Litton for its attorneys' willful failure to make pretrial discovery, and decided that the appropriate punishment for that behavior was denial of all costs and attorney's fees to which Litton would otherwise have been entitled. *Litton Systems, Inc. v. American Telephone and Telegraph Co.*, 91 F.R.D. 574 (S.D.N.Y.1981), *aff'd*, 700 F.2d 785 (2d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). Accordingly, Litton does not seek costs or attorney's fees for the pretrial or trial phases of the litigation.[2]

AT & T contends that Litton's motion should be denied in its entirety for the following reasons: (1) it construes my earlier Opinion depriving Litton of its costs and attorney's fees as applying to all costs and fees incurred in connection with the litigation, including appeals; (2) it urges that even if my earlier Opinion did not extend to costs and attorney's fees incurred on appeal, I should deny Litton those costs and fees as an additional sanction for its attorneys' misconduct; (3) it contends that Litton waived its right to apply for costs and

---

**1.** Under *Perkins v. Standard Oil of California,* 399 U.S. 222, 223, 90 S.Ct. 1989, 1990, 26 L.Ed.2d 534 (1970), a successful litigant does not apply directly to the appellate courts to recover costs and attorney's fees incurred on appeal, but instead applies to the district court.

**2.** Litton has also excluded the following items from its application: (1) any costs or attorney's fees generated prior to October 1, 1981, even though Litton says some preliminary work relating to the appeal was performed during that

period; (2) $67,000 for certain taxable costs on appeal that AT & T has already paid; (3) any costs or attorney's fees incurred in connection with Litton's claim that it was entitled to an increase in postjudgment interest as a result of an amendment to 28 U.S.C. § 1961; (4) any time charges for work performed by Litton's corporate counsel, Robert H. Lentz, Theodore F. Craver, and Larry L. Yetter; and (5) hours Litton's attorneys, Howrey & Simon, recorded but did not bill to Litton.

attorney's fees by executing a Satisfaction of Judgment that did not reserve that right; and (4) it argues that Litton's time records are not sufficiently specific to determine whether the time spent was on issues on which Litton prevailed, or on issues on which Litton did not. AT & T also raises a number of objections to specific portions of Litton's application. I will address each of these contentions in the order presented above.[3]

■ First, with respect to AT & T's contention that my earlier Opinion depriving Litton of its costs and attorney's fees operates to bar its present application for costs and fees incurred on appeal, I must say that I did not intend my Opinion to be so read. Indeed, as Litton has pointed out, at the time I issued my Opinion, I was in no position to consider Litton's appellate fees: I did not know what would happen on appeal, what Litton's appellate fees would be, or whether Litton would be successful and entitled to such fees.

Moreover, I have reviewed my earlier Opinion and find little in it suggesting that the sanction I imposed there would apply to costs and fees incurred on appeal. I have also reviewed the Court of Appeals' opinion affirming my decision, and despite AT & T's urging, I see nothing in it to indicate that the court read my decision any differently than I intended. Therefore, I conclude that my earlier Opinion does not bar Litton's instant application.

■ I also disagree with AT & T's second argument, that I should deny Litton's application for appellate costs and fees as an additional punishment for its counsel's misconduct. While I do not wish to suggest that the passage of time has made that misconduct any less reprehensible, I am satisfied that Litton's counsel have been sufficiently punished for their misdeeds. As AT & T itself has pointed out, Litton and its counsel sustained considerable adverse publicity when I issued my decision, and, of course, they suffered a substantial pecuniary loss as well. Moreover, I am not persuaded by AT & T's argument that by permitting Litton to recover its appellate costs and fees I would create "the impression that flagrant, dishonest conduct becomes acceptable if the party adjudged guilty wins an appellate affirmance on its substantive claim." Def. Mem. in Opp. at 9. I fully trust that the seriousness of the misconduct in this case and the Court's willingness to punish such misconduct has not been and will not be lost on Litton's counsel or on the bar generally.

■ Accordingly, I turn to AT & T's third contention, that Litton waived its right to seek its appellate costs and attorney's fees by executing a Satisfaction of Judgment that did not expressly reserve that right. Litton executed the Satisfaction in question on January 26, 1984, ten days after the Supreme Court denied AT & T's petition for a writ of certiorari. At the time, Litton's appeal of my decision denying its motion to amend the judgment to provide for a higher rate of interest was pending before the Court of Appeals.[4] Ac-

---

3. In addition to the objections listed, AT & T contends that Litton's application must be denied in its entirety because Litton did not give AT & T's attorneys sufficient access to Howrey & Simon's billing records to make a thorough review. AT & T has not substantiated this allegation.

Litton made its billing records available to AT & T's attorneys at the New York offices of Curtis, Mallet-Prevost, Colt & Mosle from March 26, 1984 through April 20, 1984. Bodner Aff. at ¶ 9. Thus, AT & T's counsel had twenty business days to review the documents. During that period, Litton also permitted AT & T's attorneys to borrow the documents from Curtis, Mallet's offices and take them to their own offices for limited periods. *Id.* at ¶ 11. Under this arrangement, AT & T's counsel had the documents in their possession for all or part of twelve business days. *Id.* That clearly provided AT & T with an adequate opportunity to review the records.

4. Litton had moved to amend the judgment for an increase in post-judgment interest as a result of an amendment to 28 U.S.C. § 1961. I ruled that this amendment did not apply to judgments entered prior to the effective date of the new statute. *Litton Systems, Inc. v. American Telephone and Telegraph Co.,* 568 F.Supp. 507 (S.D. N.Y.1983). The Court of Appeals affirmed that decision. 746 F.2d 168 (2d Cir.1984).

cordingly, Litton expressly reserved in the Satisfaction its right to any additional interest the Court of Appeals might award, and its right to seek further review in the Supreme Court if necessary. The executed Satisfaction reads in relevant part as follows:

WHEREAS, defendants have paid to plaintiffs the sum of $340,993,305.92 (three hundred forty million, nine hundred ninety-three thousand, three hundred five dollars and ninety-two cents), representing the amount of said Amended Judgment and interest thereon at the rate of 9 (nine) per cent to the date hereof; and

WHEREAS, it is hereby certified that there are no outstanding writs of execution to enforce said Amended Judgment; now,

THEREFORE, satisfaction of said Amended Judgment, except for any additional interest thereon that may be allowed upon a final determination of plaintiffs' pending appeal (including review, if any, by writ of certiorari in the United States Supreme Court), is hereby acknowledged, and the Clerk of the Court is hereby authorized to make an entry of such satisfaction on the docket of said Amended Judgment, and to cancel and discharge the same to that extent.

Attachment H to Simon Aff. As may be seen, Litton did not reserve in the Satisfaction a right to make this motion for its appellate costs and attorney's fees.

However, in addition to the Satisfaction of Judgment, Litton executed a "receipt" when the judgment was paid. AT & T drafted a proposed receipt which William Simon, lead counsel for Litton, received on January 25, 1984, the day before he executed the Satisfaction of Judgment on Litton's behalf. Simon Aff. at ¶ 5. The proposed receipt read in relevant part:

The undersigned acknowledge receipt, on behalf of themselves and the other plaintiffs in the aforementioned action, of the above-described checks payable in the aggregate dollar amount of $340,-993,305.92 *in full payment of judgment in the aforementioned action, including all interest and costs*, except to the extent of any interest which may be ordered to be paid to plaintiffs as a result of a final determination of plaintiffs' pending appeal from the district court's denial of their motion to amend the Judgment, as further specified in the Satisfaction of Judgment.

Attachment D to Simon Aff. (emphasis added).

Upon receiving the proposed receipt, Simon telephoned AT & T's Assistant General Counsel, Raymond Brenner, and advised him that he could not sign the proposed receipt because Litton intended to make this application for appellate costs and attorney's fees. Simon Aff. at ¶ 6. Simon apparently read the language of the proposed receipt concerning costs as waiving Litton's right to make such an application. Therefore, he advised Brenner that he would sign the receipt only if the word "awarded" were inserted before "costs" so that it was clear that Litton was discharging only costs that had already been awarded, and not prejudicing its proposed motion for appellate costs and attorney's fees. *Id.* AT & T agreed to Simon's request and made the change in the wording of the receipt. However, no corresponding change was made in the Satisfaction of Judgment.

AT & T does not deny that Simon advised its counsel before the Satisfaction was executed that Litton intended to make this motion for its appellate costs and attorney's fees, or that AT & T's counsel agreed to the change in the wording of the receipt. *See* Brenner Aff. at ¶ 3. It contends, however, that the receipt was intended only as an internal accounting document and that only the Satisfaction of Judgment represents a full integration of the agreement between the parties. Therefore, it argues that I should not consider Simon's description of the events surrounding the modification of the wording of the receipt or the modification's effect on Litton's right to make this application.

In taking this position, AT & T attempts to capitalize on what was obviously an oversight by Litton's counsel. While perhaps Litton should have been more careful in reserving in the Satisfaction its right to make this application, the fact remains that AT & T does not deny that Simon expressly advised Brenner before the Satisfaction was executed that Litton intended to make this motion. In addition, AT & T does not deny that the change in the wording of the receipt was intended to memorialize Litton's right to do so. Thus, there is no real dispute as to the true agreement between the parties, and I see no good reason to conclude that Litton waived its right to apply for its appellate costs and fees by failing to reserve it expressly in the Satisfaction of Judgment.

■ That brings me to AT & T's fourth argument in opposition to Litton's application. AT & T contends that Litton's application must be denied in its entirety because Litton was not the prevailing party on all of the issues on appeal, and the documentation submitted by Litton's counsel does not differentiate between time spent on issues Litton won and time spent on issues it lost. After reviewing the issues raised on appeal, I have concluded that AT & T's argument is unavailing.

The parties raised three categories of issues in the Court of Appeals. First, AT & T argued that various trial rulings and instructions were erroneous. The Court of Appeals rejected these arguments, and AT & T concedes that Litton was the prevailing party on these issues. Second, AT & T raised the sanction issue, argued that the sanction imposed was not severe enough, and suggested that a more appropriate sanction would have been dismissal of Litton's case. Litton also appealed the sanction, but of course argued that it was too severe. The Court of Appeals rejected the arguments of both parties, and affirmed the sanction imposed. Because the Court of Appeals did not reduce or vacate the sanction as Litton had requested, AT & T contends that Litton was not the prevailing party on the sanction issue. Finally, Litton conditionally appealed some issues it had lost at trial in the event the Court of Appeals reversed the judgment and a new trial was necessary. However, since the Court of Appeals affirmed the judgment, it had no occasion to review these issues. AT & T contends that since the Court of Appeals found it unnecessary to address these questions, Litton cannot be considered the prevailing party with respect to these issues either.

Litton does not dispute that its attorneys failed to record the hours spent on the appeal in a way that would permit their classification into the categories I have just set out above. This failure was more than a minor oversight in light of the Court of Appeals' repeated admonitions to attorneys to maintain detailed accounts of the hours they spend on litigation. Litton certainly should have anticipated that it might achieve only mixed results on the appeal, and its attorneys should have taken steps to record carefully how much time was spent on each issue raised.

Nonetheless, in view of the Supreme Court's recent decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), I conclude that Litton's failure to identify which hours were spent on issues it clearly won and which hours were spent on issues it did not clearly win is not fatal to this application. In *Hensley,* the Supreme Court rejected the issue-by-issue analysis that AT & T advocates here in favor of a more straightforward "bottom line" approach. The Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. *In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit....* Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach

certain grounds is not a sufficient reason for reducing a fee. *The result is what matters.*

*Id.* at 435, 103 S.Ct. at 1940 (citation and footnote omitted; emphasis added).

■ By this standard, it is clear that Litton is entitled to the fees it reasonably incurred in connection with the issues it raised on its conditional appeal, even though the Court of Appeals never addressed those issues. No one, not even AT & T, can deny that Litton achieved excellent results on the appeal. Moreover, the only apparent reason why the Circuit Court did not address the issues Litton raised on its appeal was that it was persuaded by Litton's arguments in opposition to AT & T's direct appeal. Since Litton was fully successful in defending the judgment it had won, it should be fully compensated for the attorney's fees it incurred in that effort.

■ The hours Litton spent on the sanction issue admittedly present a more difficult question. Even under *Hensley,* work on an unsuccessful claim should be excluded from a fee award if that claim is completely unrelated or distinct from the successful claims. *Id.* There can be no doubt that Litton was unsuccessful in its attempt to persuade the Circuit Court to vacate the sanction I had imposed on it, and that the sanction issue was distinct both as a matter of fact and legal theory from all of the other issues raised on the appeal. Nonetheless, an examination of the manner in which the sanction issue was raised on appeal shows that Litton was, in one sense, the prevailing party on that issue. For that reason, I believe Litton should recover compensation for the hours its attorneys spent litigating that question as well.

AT & T directly appealed the sanction I had imposed on Litton and was the first party to brief the issue to the Circuit Court. As mentioned earlier, AT & T argued that the sanction imposed was not severe enough and asked the Court of Appeals to impose the ultimate sanction of dismissing Litton's case. Litton cross-appealed and responded to AT & T's brief by arguing (1) that this Court had correctly declined to dismiss the case, and (2) that a lesser sanction was called for. Litton apparently and properly saw these two arguments as interrelated and presented them in the same section of its brief to the Court of Appeals. As I indicated earlier, the Court of Appeals ruled for Litton on the first argument, but sided with AT & T on the second, and thereby made each party both a prevailing and losing party at the same time.

However, since the arguments presented were so interrelated, I believe the fact that Litton prevailed on one of them justifies an award of the reasonable costs and attorney's fees incurred in litigating both of them. Since the arguments were so interrelated, I doubt that Litton's counsel spent many hours preparing and presenting the argument they lost in excess of the time they would have expended if they had prepared and presented only the argument they won. In other words, I believe it would have been practically impossible for Litton's attorneys to differentiate between the hours they spent on one argument and the hours they spent on the other. For this reason, and for the reasons I have discussed in the paragraphs above, I conclude that Litton is entitled to recover all of the costs and attorney's fees it reasonably incurred in litigating all of the issues presented on appeal, including the sanction issue and the issues Litton raised on its conditional appeal. Having disposed of these preliminary issues, I finally turn to the specifics of Litton's application.

A. Attorney's Fees.

The first step in reviewing any attorney's fee application is to calculate the lodestar amount. That is done by multiplying the number of hours reasonably spent on the lawsuit by an appropriate rate of compensation. *See generally City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974).

In its initial application, Litton claimed that its attorneys and paralegals had spent 16,300.75 hours on the appeal and related matters through January 31, 1984. Out of

these thousands of hours, AT & T specifically objected to 119 on the ground that they were spent on issues unrelated to the appeal. *See* Def.Mem. in Opp. at 20–21, 25 and Appendix thereto. Litton thereafter revised its application to include time spent through April 30, 1984 and at the same time, it reviewed AT & T's specific objections. Litton voluntarily eliminated 40.75 hours of the challenged items, but it declined to eliminate or adjust the other contested entries. Bodner Aff. at ¶ 16 and Attachment F thereto. I have reviewed the balance of the hours to which AT & T specifically objected, and conclude that they were properly included in Litton's application. Thus, with the revision and voluntary adjustments, Litton claims that its attorneys and paralegals spent a total of 15,834 hours on the appeal.

█ In addition to the specific objections noted above, AT & T has objected more generally to other items in the application. First, it argues that Litton may not recover for the "hundreds" of hours spent preparing a bill of costs and this application for attorney's fees. However, the prevailing rule in cases such as this, where the attorney's fees sought are not to be paid out of an equitable common fund, is that time spent on preparing and litigating the fee application is compensable. *Prandini v. National Tea Co.*, 585 F.2d 47, 52–53 (3d Cir.1978); *Arizona v. Maricopa County Medical Society*, 578 F.Supp. 1262, 1276 (D.Ariz.1984); *Mid-Hudson Legal Services v. G & U, Inc.*, 465 F.Supp. 261, 269–70 (S.D.N.Y.1978). As for the fact that Litton's attorneys spent so many hours working on this application, I can only say that I am not surprised. Having seen some of the correspondence between the parties' attorneys concerning the fee application, *see* Attachments G and H to Bodner Aff., I suspect that Litton reasonably believed that its application would be hotly contested and spent considerable time making the necessary preparations. I believe that some of these hours could have been eliminated if AT & T had attempted to cooperate with Litton in resolving their differences, but AT & T apparently declined to

do so. It will not be heard to complain now of inefficiencies for which it was in significant part responsible.

█ AT & T also objects to the many hours Litton's attorneys spent reviewing and preparing responses to AT & T's petition for rehearing to the Court of Appeals, to the United States Solicitor General's *amicus curiae* brief to the Supreme Court, and to AT & T's reply to the Solicitor General's brief. The Supreme Court and the Second Circuit did not request these responses from Litton, and Litton never filed them. For these reasons, AT & T labels the work Litton's attorneys did "unnecessary," thereby suggesting that it was a waste of time.

However, contrary to AT & T's claim, this work was useful and, indeed, prudent. Litton has stated that most of the time spent reviewing these documents and preparing responses to them was later used in responding to an *amicus curiae* brief filed by Benjamin Hooks in the Court of Appeals and to AT & T's petition for a writ of certiorari in the Supreme Court. Moreover, Litton's attorneys would not have properly represented their clients' interests if they had not spent some time carefully reviewing these all-important documents. Undoubtedly, AT & T's petition for rehearing and the Solicitor General's *amicus curiae* brief in the Supreme Court could have had substantial impact on the litigation. It is also possible, of course, that those courts might have requested a response from Litton on short notice; Litton had to be prepared for any possibility. Accordingly, I am fully satisfied that the hours Litton's lawyers used to review these documents and prepare responses to them was well spent and properly included in Litton's application.

Thus, I conclude that Litton is entitled to compensation for all of the 15,834 hours its attorneys and paralegals devoted to the appeal. AT & T has failed to show that the number of hours Litton's counsel spent on the appeal was unreasonable or otherwise noncompensable. Accordingly, I turn to

the next step in computing the fee award, setting an appropriate rate of compensation.

Litton has requested that I apply its actual current billing rate for each attorney and paralegal who worked on this case. Litton defines the actual current billing rate as the rate charged for each attorney and paralegal during the last billing period that person worked on the case.

AT & T does not dispute that Howrey & Simon's rates for services are reasonable in today's legal market. However, it argues that if I apply current billing rates to work performed two and one-half years earlier, when the appellate stage of the litigation first began, Litton will receive a windfall in the form of two upward adjustments in its rates. First, the current rate reflects yearly increases in the firm's general billing rates, and second, it reflects increases in individual billing rates caused by greater seniority. Thus, for example, the work of a lawyer who was a junior associate at Howrey & Simon in 1981 would be compensated not at the 1984 junior associate rate, but at the 1984 rate for a more senior associate. AT & T argues that in order to avoid awarding this windfall, I should limit Litton to recovery at Howrey & Simon's historic billing rate, that is, the prevailing rate at the time the work was performed.

The Second Circuit considered the question of whether a prevailing party should recover its attorney's fees at current rates or historic rates in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983) (*"NYSARC"*). In discussing the issue, the court stated that "[n]either historic nor current rates are ideal." *Id.* at 1152. The court noted that "historic rates do not reflect inflation or the cost of forgone interest, and, therefore, undercompensate prevailing parties." *Id.* On the other hand, while current rates in-

corporate inflation into the fee award, "the incorporation is imprecise and can overcompensate prevailing parties." *Id.* The court concluded that historic rates should be used in multi-year cases so as to avoid windfall awards, *id.* at 1153, but added that where, as in this case, "the services were rendered over two or three years, relevant figures for the current year will normally still be appropriate." *Id.*

■ I have carefully considered the concerns the Court of Appeals expressed in *NYSARC*, and have concluded that using Howrey & Simon's current rates is appropriate here. In reaching this conclusion, I am persuaded by the analysis in the uncontroverted affidavit of Ellen Blumstein. Using the United States Department of Labor's Consumer Price Index, Blumstein calculated the inflation rate for the period October 1981 through June 30, 1984 at 10.8%. Of course, if I applied Howrey & Simon's historic rates, Litton would be undercompensated by this amount. However, Blumstein has demonstrated that if I applied Howrey & Simon's current billing rates, Litton's award would be increased by only 10.4% over the historic rates. Since this is still 0.4% less than the inflation rate for the period, Litton would obviously not receive a windfall; instead, its compensation would be nearly exactly full, which of course is the aim of every fee award. In light of this information, and the Second Circuit's decision that the use of current rates is normally appropriate, I will apply Howrey & Simon's current rates in fixing the lodestar amount.

Using the number of hours set out above and the rate of compensation I have just discussed, I calculate Litton's lodestar amount at $1,496,564. This chart reflects the details of the calculation:

| Partners | Hours | $ Rates/Hr. | Lodestar |
| --- | --- | --- | --- |
| William Simon | 88.50 | 220 | $ 19,470 |
| John Bodner | 1,889.00 | 180 | 340,020 |
| Francis A. O'Brien | 1,057.50 | 145 | 153,338 |
| Ralph Gordon | 1,165.50 | 135 | 157,275 |
| John W. Nields | 384.75 | 150 | 57,713 |

| Partners | Hours | $ Rates/Hr. | Lodestar |
| --- | --- | --- | --- |
| Albert O. Cornelison | 931.00 | 125 | $ 116,375 |
| Others | 113.00 | 169 | 19,097 |
| Total | 5,628.75 | | $ 863,288 |
| **Associates** | | | |
| Kevin P. McEnery | 1,395.25 | 115 | $ 160,454 |
| Lewis M. Barr | 1,305.25 | 105 | 137,051 |
| Lisa Gok | 473.25 | 75 | 35,494 |
| Michael K. Brown | 287.75 | 75 | 21,581 |
| Others | 697.25 | 80 | 55,780 |
| Total | 4,158.75 | | $ 410,360 |
| **Paralegals [5]** | | | |
| Lucy Kinsey | 133.00 | 55 | $ 7,315 |
| Susan Koepsell | 1,123.75 | 49 | 55,064 |
| Janet Wagner | 1,271.25 | 59 | 62,291 |
| Ellen Blumstein | 135.25 | 45 | 6,086 |
| Nicholas Demko | 1,126.25 | 33 | 37,166 |
| Robert Groom | 391.75 | 18 | 7,052 |
| Daniel Douglas | 1,184.75 | 19 | 22,510 |
| Greg Wigglesworth | 85.25 | 26 | 2,217 |
| Others | 595.25 | 39 | 23,215 |
| Total | 6,046.50 | | $ 222,916 |
| **FEE TOTALS** | 15,834.00 | | $1,496,564 |

After fixing the lodestar amount, the only remaining question with respect to the issue of attorney's fees is whether Litton is entitled to an upward adjustment or bonus. As indicated earlier, Litton requests that I multiply the lodestar by a factor of 1.5 to 2.5. AT & T contends that such a bonus is unwarranted.

Litton argues that a multiplier should be applied here because (1) it did not have the benefit of a prior government judgment or decree against AT & T upon which to build its case; (2) both parties were represented by counsel of high quality; (3) the case was large and complex; (4) the risk involved was great; and (5) the result obtained was unprecedented. AT & T, on the other hand, contends that three of these factors, the quality of counsel, the complexity of the case, and the results obtained, are no longer relevant considerations in light of the Supreme Court's recent decision in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

In *Blum*, the lower court had increased an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, on the ground that these three factors had been met. The Supreme Court, after noting that application of § 1988 involved the same "standards currently in use" in fixing awards in antitrust and securities cases, *id.* 104 S.Ct. at 1546, declined to uphold the "bonus" aspect of the award. First, the Court stated that while the trial court's conclusion regarding the high quality of counsel was no doubt true, "[t]he 'quality of representation' ... generally is reflected in the reasonable hourly rate." *Id.* at 1549. Second,

5. AT & T has objected to Litton's request that paralegal fees be included in the lodestar amount. However, since in the discussion below I decline to apply a multiplier to the lodestar, it makes no difference whether Litton's paralegal fees are included as part of the attorney's fee award or as part of Litton's recoverable costs.

the Court noted that "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel," *id.* at 1548, and accordingly, they also "do not warrant an upward adjustment" of a fee award. *Id.* Finally, the Court added that because "acknowledgment of the 'results obtained' generally will be subsumed within the other factors used to calculate a reasonable fee," it too "normally should not provide an independent basis for increasing the fee award." *Id.* at 1549.

Litton argues that *Blum* is inapposite here because the Court was construing only Congress's intent in passing the civil rights attorney's fees statute. While I agree with Litton that the Court did not purport to overrule standing precedent for the calculation of fee awards in antitrust cases, I cannot agree that the Court's statements are irrelevant here. As I mentioned, the Court explicitly noted that the application of § 1988 involved the same standards as antitrust cases, and the particular problems the Court identified are equally present here. For instance, while I do not question the high caliber of Howrey & Simon's work, the quality of that work is reflected in the billing rates Howrey & Simon charges its clients. Similarly, the complexity of the appeal is reflected in the great number of hours I have permitted Litton to recover, as are, to a lesser degree, the results obtained. For these reasons, I do not believe these factors support any further adjustment of the lodestar amount.

■ The other two factors Litton claims are important here likewise do not support an upward adjustment. It is true that Litton did not have the benefit of a government judgment or decree against AT & T. But as AT & T has pointed out, the benefits such a decree would have provided—such as collateral estoppel, the fo-

cusing of issues or the easing of discovery—are trial-level benefits. Since I have barred Litton from recovering costs and attorney's fees incurred during the pre-trial and trial phases of this litigation, I think it inappropriate to increase its appellate fees for this trial-level factor.

■ AT & T has also correctly noted that Litton did not, at the appellate phase of the litigation, undertake any substantial risk. Courts have often enhanced fee awards in antitrust cases in order to encourage plaintiffs to bring difficult suits to enforce the antitrust laws. But by the time this case reached the Court of Appeals, Litton needed no encouragement: protecting its $276 million judgment undoubtedly provided Litton with ample incentive.

■ Accordingly, I decline to award Litton the bonus it seeks. Instead, I grant it its unenhanced attorney's fees in the amount of $1,496,564. For the reasons I have discussed above, I think that amount fully compensates Litton for all of the time its attorneys reasonably expended in defending the appeal. Moreover, I am confident that this award, large as it is, is reasonable. I am reassured in that view by the fact that AT & T apparently spent approximately three times that amount in fees and costs on the same appeal. *See* Pl. Application for Atty's Fees, Appendix A.[6]

As previously noted, Litton's application includes only fees incurred through April 30, 1984. It may submit an application for any fees incurred after that date within twenty days of the date of this Opinion and Order.

## B. Costs

In addition to its attorney's fees, Litton seeks $288,646.85 in costs. AT & T objects

---

6. Appendix A consists of quarterly reports AT & T filed with the Federal Communications Commission showing its total expenses in defending the lawsuit from October 1, 1981 through September 30, 1984, roughly the period the case was on appeal. As Litton concedes, these reports do not permit a direct comparison with

amounts Litton seeks in its application because the reports reflect only general categories of expense and do not disclose the specific nature of the work performed by AT & T's attorneys. Nonetheless, these reports do operate as rough measure of the reasonableness of Litton's award.

to a number of the items claimed, as I will discuss below.

■■■ First, AT & T objects to $119,-004.84 Litton seeks for computerized litigation support services, $9,290.50 for word processing, and $20,372.29 for use of Lexis. While some of the authorities Litton has cited from other circuits take a contrary view, the well-established rule in this circuit is that the only costs recoverable by a successful plaintiff in a private antitrust suit are those normally allowable under 28 U.S.C. § 1920 and Rule 54(d), F.R.Civ.P. *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 309 n. 75 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Dai Ming Shih v. Kennedy,* 297 F.2d 791, 806–07 (2d Cir. 1924). None of these three computer services represents a recoverable cost under the rule or the statute. *Berkey Photo,* 603 F.2d at 309 n. 75 (cost of computer retrieval service not recoverable); *United States v. Bedford Associates,* 548 F.Supp. 748, 753 (S.D.N.Y.1982) (Lexis and word processing costs "are out of pocket expenses" and not recoverable).

■■■ AT & T also objects to $38,-181.78 Litton seeks for "administrative office expenses" such as long distance telephone costs, messenger services, local courier services, taxis, out-of-town courier services, and other travel expenses. As I ruled in *Beech Cinema, Inc. v. Twentieth Century-Fox Film Corp.,* 480 F.Supp. 1195, 1198 (S.D.N.Y.1979), *aff'd,* 622 F.2d 1106 (2d Cir.1980), these items are not properly includible in an application for costs under § 1920. Litton also requests $97,419.86 in printing and photocopying costs. As I stated in *Beech Cinema,* photocopying costs are not recoverable except to the extent that they are furnished to the Court or opposing counsel. *Id.* Litton may submit within twenty days of the date of this Opinion and Order a revised state-

ment of its printing and photocopying costs, limited as indicated.

■■■ Finally, AT & T objects to $3,687.15 Litton seeks for professional services provided and costs incurred by its local counsel, Curtis, Mallet-Prevost, Colt & Mosle. AT & T complains that Litton has not detailed what services were provided. However, contrary to that assertion, the billing records submitted by Curtis, Mallet adequately set forth the services performed. *See* Billing Records at 306–13. Nonetheless, since some of these fees include disbursements I have held unrecoverable, I will reduce the amount to $2,586.50, the cost of the professional services rendered.

Thus, I award Litton costs in the amount of $2,808.25.[7] Litton may submit an application for any recoverable costs incurred since April 30, 1984, and a revised statement of recoverable printing and photocopying costs, within twenty days of the date of this Opinion and Order.

Conclusion

For the reasons stated above, I grant Litton attorney's fees in the amount of $1,496,564 and costs in the amount of $2,808.25. As I indicated above, Litton may submit updated applications within twenty days of the date of this Opinion and Order. AT & T will have twenty days from the date of receipt of those applications to submit any objections.

SO ORDERED.

---

7. AT & T does not object to $221.75 Litton seeks for transcript reporter fees and filing fees. Ac- cordingly, I have included that amount in the award.