Leonard S. SCHWARTZ, on behalf of himself and all others similarly situated, Plaintiff,

v.

NOVO INDUSTRI A/S, Defendant.

No. 85 Civ. 5500 (KC).

United States District Court, S.D. New York.

March 21, 1988.

Abbey & Ellis, New York City, for Leonard S. Schwartz; Stephen T. Rodd, of counsel.

Rosenman & Colin, New York City, for Novo Industri A/S; J. Kelly Neuling, Jr., of counsel.

## OPINION AND ORDER

CONBOY, District Judge:

Plaintiff applies for an order and judgment, pursuant to Fed.R.Civ.P. Rule 23(e), approving the proposed settlement of a securities fraud class action lawsuit. The proposed settlement is on behalf of a class consisting of all persons who purchased or otherwise acquired American Depository Shares of the Class B stock of Novo Industri A/S ("Novo") between November 15, 1983 and October 12, 1984, inclusive (the "class period"), except Novo, its agents and nominees, and persons within Novo's control. The settlement fund is $425,000. Plaintiff's counsel seeks the award of legal

fees in the amount of $127,500, and $5,000 reimbursement for expenses.

## THE LITIGATION

Novo, the sole defendant, is a Danish pharmaceutical company. Its securities are traded in the United States in the form of American Depository Shares. Plaintiff purchased sixty Novo American Depository Shares on or about August 3, 1984. On August 23, 1984, and again on October 12, 1984, Novo made disclosures that reflected adversely on its profitability.

After plaintiff's counsel reviewed Novo's public filings and statements, the characteristics of the markets for Novo's products, and the nature of Novo's industry and competitive environment, plaintiff decided to bring this class action under the federal securities laws. The complaint, filed July 18, 1985, alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1987). The complaint alleged Novo knew or was reckless in not knowing, and failed to disclose adverse information regarding sales of one of its products, and that Novo misrepresented the company's ability to obtain approval of a new product from the Food and Drug Administration.

On October 4, 1985, Novo moved to dismiss the complaint pursuant to Fed.R.Civ. P. Rules 9(b) and 12(b)(6). Plaintiff's motion for certification as class representative, made prior to that date, was adjourned by the parties pending resolution of the motion to dismiss. In an opinion dated June 16, 1986, this court granted Novo's motion under Rule 9(b), and granted plaintiff leave to replead within twenty days from that date.

Plaintiff filed an amended complaint on July 7, 1986. Plaintiff contended Novo was at least reckless in making a public projection of its future growth based on sales to its major customer, when that customer was increasing its internal production of Novo's product. Plaintiff contended further that Novo was at least reckless in making a public projection based on sales of its new and as-yet-unapproved product, and that Novo was at least reckless in making a public projection that failed to take into account over-stocking by certain of Novo's distributors, and in making such a projection without disclosing the fact of over-stocking.

On August 15, 1986, Novo moved to dismiss the amended complaint pursuant to Rules 9(b) and 12(b)(6). In an opinion dated April 24, 1987, 658 F.Supp. 795, this court granted Novo's motion. Final judgment was entered in Novo's favor on April 29, 1987.

On May 6, 1987, plaintiff appealed to the United States Court of Appeals for the Second Circuit from the judgment of dismissal entered in this court. Prior to a hearing, the parties agreed in principle to the settlement presented to this court in a stipulation of settlement. Plaintiff withdrew his appeal, and this court vacated the judgment for defendant, on joint application, on September 4, 1987. On that date, the court certified plaintiff as class representative and certified plaintiff's counsel as class counsel. The parties have agreed that if the settlement is not approved by this court, the court may re-enter judgment for Novo and plaintiff may reinstate his appeal.

The stipulation provides that Novo establish the settlement fund of $425,000. Twenty-five thousand dollars of this amount has been allocated toward paying the costs and expenses associated with identifying class members, notifying them of the proposed settlement, and otherwise administering the settlement. Whatever part of this twenty-five thousand dollars is spent for such purposes reduces the proceeds available for distribution to class members accordingly.

Mailings of the notice of settlement, together with proofs of claims, were made on September 16, 1987 to three hundred twenty-nine purchasers of record during the class period, and a summary notice appeared in the national edition of the *Wall Street Journal,* also on September 16, 1987. As a result of inquiries, approximately six thousand additional copies of the notice and proof of claim have been

sent to potential class members. No class member has objected to either the proposed settlement or to counsel's application for an award of fees and expenses. The opt-out period lasted from September 16 to December 1, 1987. A hearing to consider objections to the fairness and adequacy of the settlement was scheduled for January 5, 1988. No objection was then raised, and none has been received by the court since that date.

## EVALUATION OF THE SETTLEMENT

■ The function of the court on this application for approval of the settlement is a "delicate one," *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y.) (quoting *Newman v. Stein*, 464 F.2d 689, 691 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)), *aff'd mem. sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir.), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973), requiring "a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate to" the class and the defendant. *Id.* Proponents of the settlement have the initial burden of demonstrating 1) the settlement is not collusive but was reached after arm's length negotiation; 2) the proponents are counsel experienced in similar cases; 3) there has been sufficient discovery to enable counsel to act intelligently; and 4) the number of objectors or their relative interest is small. *Desimone v. Industrial Bio–Test Laboratories*, 83 F.R.D. 615, 618 (S.D.N.Y.1979). If the proponents establish these propositions, the burden shifts to any objectors. *Id.* Finally, the court must approve the settlement only after finding it to be reasonable when viewed against the class's ultimate probability of success in the lawsuit. *Id.*

■ First, the proposed settlement is not collusive. The negotiations took place—and the settlement in principle was reached—with the assistance of Staff Counsel in the Second Circuit, who met with the parties individually and together. *See* Plaintiff's Memorandum of Law in Support of Proposed Settlement and Award of Attorney's Fees and Expenses at 8. Second, both plaintiff's counsel, Abbey & Ellis, and defendant's counsel, Rosenman & Colin, are experienced in similar cases. *See, e.g., Weiss v. Drew Nat'l Corp.*, 465 F.Supp. 548, 550 (S.D.N.Y.1979) (Abbey & Ellis's predecessor, Law Firm of Arthur N. Abbey); *Lewis v. Teleprompter Corp.*, 88 F.R.D. 11, 13 (S.D.N.Y.1980) (Rosenman & Colin). Third, counsel for the plaintiff class has represented to the court that no objections to the proposed settlement have been received. *See* Affidavit of Stephen T. Rodd, Esq. in Support of Settlement and Application for Attorneys' Fees at para. 4. As stated above, the court has not received any objections.

■ The absence of any formal discovery in this action, *see* Plaintiff's Memo. in Support at 15, is nettlesome initially. Plaintiff's counsel submits that much of the case rests on matters of public record, which materials, such as public filings and news articles, counsel thoroughly reviewed. *See id.* at 15–16. Also, Staff Counsel did involve himself in the negotiations.

■ The absence of formal discovery has not always prevented consideration of settlement. *See In re Baldwin–United Corp.*, 105 F.R.D. 475, 483 (S.D.N.Y.1984); *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 & n. 9 (E.D.N.Y. 1982), *aff'd*, 721 F.2d 881 (2d Cir.1983), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). The court concludes that counsel for the class has had sufficient information to act intelligently on behalf of the class.

The proponents thus satisfy their burden. As there are no objections to the proposed settlement to consider, it is appropriate to proceed to scrutinize the settlement to determine if it is fair, reasonable and adequate. The factors to be considered include: 1) the complexity, expenses and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of

maintaining the class action through the trial; 7) the ability of the defendant to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; and 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974); *accord Malchman v. Davis*, 706 F.2d 426, 433–34 (2d Cir. 1983). Each of these considerations that is significant is addressed in turn.

Assuming plaintiff succeeded in his appeal, he would have to obtain certification as class representative and maintain it throughout the litigation. Novo could be expected to oppose plaintiff's motion, as it had argued, in connection with its motion to dismiss, that plaintiff could not establish that his claims were typical of the class members, nor that common questions of fact or law predominated.

The discovery process would have been complicated by defendant's location in Denmark. Novo's counsel states that relevant documents are located in several countries in four continents. The subpoena power of this court is limited, and may not extend to all possible witnesses. *Cf. Eltman v. Grandma Lee's,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 92,798 at 93,-905 (E.D.N.Y.1986) (complexity would be compounded by need for Canadian witnesses who were beyond the court's subpoena power). Further, translators would be required for at least some witnesses. Last, the elements of scienter and damages would require the hiring of numerous experts, costing significant amounts. Certainly, continued litigation would be complex, expensive and lengthy, and would consume considerable time and resources. *See Desimone,* 83 F.R.D. at 619–20.

Plaintiffs face two very significant risks in trying to establish liability. First, they would need to succeed on appeal. Second, even though the United States Supreme Court has approved the fraud on the market theory of liability, *see Basic, Inc. v. Levinson,* —— U.S. ——, ——, 108 S.Ct. 978, ——, 99 L.Ed.2d 194 (1988), which theory plaintiffs herein rely on, plaintiffs face the high risk inherent in proving this type of action. "The key element in any fraud action is scienter, and it is always difficult to prove scienter." *Desimone,* 83 F.R.D. at 620.

Plaintiffs also face the risk of establishing damages. Defendant would certainly have contested plaintiffs' interpretation of the cause of the drop in market price for its securities.

The class alleges that it may have shared in a recovery after trial in the tens of millions of dollars. This must be discounted by the possibility plaintiffs may have lost their appeal, and the difficulty in proving liability and damages. The lack of objection suggests that the class members find the settlement reasonable. *Desimone,* 83 F.R.D. at 620–21. Coupled with other indicia of fairness of the settlement, silence provides further support for approval. *Armstrong v. Board of School Directors,* 616 F.2d 305, 326 (7th Cir.1980); *City of Detroit v. Grinnell Corp.,* 495 F.2d at 462. In addition, the court is entitled to rely on the judgment of experienced counsel for the parties. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977); *Blank v. Talley Indus.,* 64 F.R.D. 125, 132 & n. 13 (S.D.N.Y.1974).

Finally, the most important factor is the strength of plaintiffs' claims on the merits, balanced against the amount offered in settlement. *City of Detroit v. Grinnell Corp.,* 495. F.2d at 455; *In re "Agent Orange" Prod. Liab. Litig.,* 597 F.Supp. 740, 762 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987). Here, plaintiffs' complaint has been dismissed twice. They are not dealing from a position of great strength. There exists a real possibility that plaintiffs may receive nothing. This weighs heavily in the court's determination. *See Weinberger v. Kendrick,* 91 F.R.D. 494, 496 (S.D.N.Y.1981) ("Plaintiffs' position with respect to each claim in this case is not so strong that settlement should be lightly rejected."), *modified on other grounds,* 698 F.2d 61 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

The fact that the settlement figure is substantially less than the claimed damages does not, by itself, mean the proposed settlement is grossly inadequate and should be disapproved. *Grinnell Corp.*, 495 F.2d at 455 & n. 2 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *see In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. at 762.

Therefore, recognizing the general policy favoring settlements, the absence of opposition to the settlement, the arms-length bargaining that produced the settlement, the unanimous agreement of counsel for both sides that this represents the best possible compromise, the heavy burdens plaintiffs would face to win their case, and the extended opt-out date which protected those class members who did not wish to be bound by the terms of the settlement, the proposed settlement hereby is approved.

## ATTORNEYS' FEES

Plaintiffs' counsel moves the court for an order awarding attorneys' fees for services rendered, in the amount of $127,500, and for reimbursement of expenses, in the amount of $5,000. The fees requested represent an amount approximately 1.11 times counsel's "lodestar" figure of $114,583.75.

### A. Fees

The determination of a proper fee involves a two-step process. First, the "lodestar" amount, a calculation of the attorneys' services in terms of the time they have expended on the case, must be determined. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir.1987); *City of Detroit v. Grinnell Corp.*, 495 F.2d at 470. Then, the court in its discretion may adjust the "lodestar" figure up or down "on the basis of frankly subjective factors." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1310 (E.D.N.Y.1985), *modified on other grounds*, 818 F.2d 226 (2d Cir.1987). Such adjustments are not mandatory and will not be made without good reason. *Id.* Particularly where, as here, the court did not preside over this case from beginning to end, facts supporting any adjustment must be set forth as specifically as possible. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir.1973), *quoted in City of Detroit v. Grinnell Corp.*, 495 F.2d at 473.

### 1. The Lodestar

Counsel has submitted an affidavit detailing time spent by each attorney and paralegal, including the purpose for which the time was spent. Initially, the court confronts a dilemma regarding the evaluation of paralegal time charges. In *City of Detroit v. Grinnell Corp., supra,* the Second Circuit stated that reimbursement for use of paralegals is limited to the cost of their wages, and that "their time cannot be considered as input in the fee award determination." 495 F.2d at 473. At least one court has followed this holding strictly, denying any compensation when, as here, the attorney submitted a paralegal's billing rate, rather than his wages. *See Campaign for a Progressive Bronx v. Black*, 631 F.Supp. 975, 979, 983 (S.D.N.Y.1986); *see also Ross v. Saltmarsh*, 521 F.Supp. 753, 769 (S.D.N.Y.1981) (citing cases where costs of use of paralegals are included as reimbursable expense). Plaintiffs' counsel has been involved in litigation in which the holding of *Grinnell Corp.* has been enforced. *See In re Alcoholic Beverages Litig.*, 1983–1 Trade Cas. (CCH) para. 65,342 at 70,039, 70,043 (E.D.N.Y.1983). Other courts have criticized this rule, reasoning that to deny compensation for overhead associated with the use of paralegals would discourage attorneys from using them for work of a routine clerical nature. *See, e.g., Zacharias v. Shell Oil Co.*, 627 F.Supp. 31, 34 n. 1 (E.D.N.Y.1984) (dictum); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. at 1322 (dictum); *see also Cameo Convalescent Center v. Senn*, 738 F.2d 836, 846 (7th Cir.1984) (allowing compensation for reasonable law clerk and paralegal fees pursuant to 42 U.S.C. § 1988 because "[s]uch a policy encourages cost-effective

delivery of legal services"), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). Finally, many courts have not addressed the issue, simply including paralegals' time. *See Friedlander v. Barnes,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 92,754 at 93,677–78 (S.D.N.Y. 1986); *In re Warner Communications Sec. Litig.,* 618 F.Supp. 735, 747, 751 (S.D. N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986); *Milstein v. Huck,* 600 F.Supp. 254, 256–57 (E.D.N.Y.1984); *Kaye v. Fast Food Operators, Inc.,* 99 F.R.D. 161, 165 (S.D.N.Y. 1983); *Equal Employment Opportunity Comm'n v. Sage Realty Corp.,* 521 F.Supp. 263, 275 (S.D.N.Y.1981); *Weinberger v. Cook Indus.,* [1981 Transfer Binder] Fed. Sec.L.Rep. para. 97,978 at 91,034 (S.D.N.Y. 1981); *In re Generics Corp. of Am. Sec. Litig.,* [1980 Transfer Binder] Fed.Sec.L. Rep. (CCH) para. 97,719 at 98,770 (S.D.N.Y. 1980).

The court is of the opinion that attorneys should be compensated for more than just paralegals' wages. This will insure that "various tasks are being performed by individuals with the appropriate skills," and that "paralegal tasks [will] not be undertaken by senior partners who seek compensation for their time at premium rates." *In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F.Supp. 1303, 1330 (C.D.Cal.

1977), *quoted in In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. at 1307. As then District Judge, now Circuit Judge, Pierce stated in *In re Generics Corp. of Am. Sec. Litig., supra,* "[t]he use of paralegals can reduce ... the costs associated with litigating large class action suits of this type." [1980 Transfer Binder] Fed. Sec.L.Rep. (CCH) para. 97,719 at 98,770. The use of paralegals should be encouraged.[1]

Nevertheless, the court is not "writing on a clean slate." *City of Detroit v. Grinnell Corporation* is the law of the Second Circuit. This court is bound to apply it. *See Christ the King Regional High School v. Culvert,* 644 F.Supp. 1490, 1496 (S.D.N. Y.1986), *aff'd,* 815 F.2d 219 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *Ore & Chem. Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, 1512 (S.D.N.Y.1985). This is so "despite any criticism that another court of appeals may have directed at the result or teaching of" the case. *See Culvert,* 644 F.Supp. at 1496 (quoting *Truck Drivers Local Union 671 v. United Parcel Serv.,* 526 F.Supp. 1044, 1049–50 (D.Conn.1981), *aff'd mem.,* 697 F.2d 298 (2d Cir.1982)). In conclusion, the court reluctantly disallows all of the amounts sought for time expended by paralegals. This denial is without prejudice.

---

**1.** Some courts have permitted the recovery of paralegals' time at billed rates, but have refused to permit the fees awarded for such time to be included in the determination of the discretionary multiplier. *See Friedlander v. Barnes,* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 92,754 at 93,678 (S.D.N.Y.1986); *Kane Assocs. v. Clifford,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 97,384 at 97,533 (E.D.N.Y.1980); *In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F.Supp. 1303, 1330 (C.D.Cal.1977). According to one court, the reason for this is that "paralegals are not members of the bar and do not share in the attorneys' risk of litigation." *In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F.Supp. at 1330. This court is puzzled by the second part of this rationale. Surely, associates of firms, who are salaried employees, share the same risk as paralegals, the risk of losing employment if the partnership does not prosper. Like paralegals, salaried associates do not benefit directly from firm profits. Associates cannot, then, be said to share in the partners' risk of litigation to any different degree than paralegals do. Yet, no court would exclude salaried associates' time from the multi-

plier calculation. *But cf. Ecos, Inc. v. Brinegar,* 671 F.Supp. 381, 398 (M.D.N.C.1987) (using different hourly rates for "law school graduates who have not been admitted to the bar"); *Trans World Airlines v. Hughes,* 312 F.Supp. 478, 482 (S.D.N.Y.1970) (excluding from firm's hours those "credited to persons who worked on the case but who were not members of the bar in the year that the services were rendered"), *modified on other grounds,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). It thus seems to the court that this is no reason to exclude paralegals' time from the calculation of a multiplier. Indeed, exclusion makes it more likely that attorneys will not delegate tasks to paralegals, thereby raising legal costs. This court agrees with the court in *Zacharias v. Shell Oil Company,* 627 F.Supp. 31 (E.D.N.Y.1984), that "[paralegal and law clerk] time should properly be included in an attorney's fee award." *Id.* at 34 n. 1 (dictum); *accord In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1296, 1322 (E.D.N.Y.1985) (dictum), *modified on other grounds,* 818 F.2d 226 (2d Cir.1987).

Plaintiffs' counsel is invited to submit a renewed application for reimbursement of such services as an item of expense, indicating wages actually paid. *See In re Alcoholic Beverages Litig.,* 1983–1 Trade Cas. para. 65,342 at 70,043.

■ The figures submitted by counsel indicate that six attorneys worked a total of 632.25 hours on this matter.[2] Billed at various current[3] rates, a lodestar figure of $107,843.75 is reached. *See supra* footnote 2. The court has reviewed the charges, and deems them appropriate.

### 2. The Discretionary Multiplier

■ Counsel seeks a multiplier of approximately 1.18,[4] yielding a figure of $127,500. The court is mindful that "an attorney will receive an otherwise reasonable compensation for his time from the lodestar figure alone." *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1099 (2d Cir.1977); *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) ("Delaware Valley I"). The plaintiff carries the burden of justifying any deviation from the lodestar. *Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Soler v. G & U, Inc.,* 658 F.Supp. 1093, 1102 (S.D.N.Y.1987).

The Supreme Court has held that normally the only factor that may be considered in determining whether to award a multiplier is the risk associated with accepting a case on a contingency basis. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, ——, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585 (opinion of O'Connor, J.), 3092–95 (opinion of Blackmun, J.) (5–4 holding that contingency nature of representation is appropriate consideration in setting reasonable fee) ("Delaware Valley II"); *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–50 (factors such as "the complexity of the litigation, the novelty of the issues, the high quality of representation, the 'great benefit' to the class" and "results obtained" are ordinarily improper bases for application of multiplier); *see also Delaware Valley I,* 478 U.S. at ——, 106 S.Ct. at 3098 (stating that *"Blum* ... limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount," and listing factors which are not appropriate in this calculation).

Even so, "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Delaware Valley II,* —— U.S. at ——, 107 S.Ct. at 3091 (opinion of O'Connor, J.) (quoting and concurring with plurality opinion, —— U.S. at ——, 107 S.Ct. at 3089, thus creating 5–4 majority on the point); *see Lewis v. Coughlin,* 801 F.2d 570, 576 (2d Cir.1986) ("one relevant factor bearing on high-risk is whether other counsel had declined to

---

**2.** The hours and current billing rates, *see infra* footnote 3, of each attorney, and the total lodestar amount yielded, are as follows:

| | | | |
|---|---|---|---|
| Arthur Abbey | 10.25 | $295 | $ 3,023.75 |
| Ralph Ellis | 0.75 | $295 | $ 221.25 |
| Stephen Rodd | 151.75 | $225 | $ 34,143.75 |
| Jill Abrams | 1.00 | $180 | $ 180.00 |
| Mark Gardy | 74.25 | $150 | $ 11,137.50 |
| Joshua Rubin | 394.25 | $150 | $ 59,137.50 |
| | 632.25 | | $107,843.75 |

Affidavit of Stephen T. Rodd, Esq. in Support of Application for Attorneys' Fees, executed Dec. 31, 1987, at para. 6 and Exhibit 4.

Abbey, Ellis, and Rodd are partners in the firm. Abrams, Gardy, and Rubin are associates of the firm. Abrams was admitted to the New York State Bar in 1982. Both Gardy and Rubin were admitted to the same Bar in 1985. *See id.* at Exhibit 5.

**3.** In the Second Circuit, it is appropriate to use current rates for services rendered over the past two or three years. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1153 (2d Cir.1983); *Litton Sys., Inc. v. American Tel. & Tel. Co.,* 613 F.Supp. 824, 833 (S.D.N.Y.1985). Here, counsel's services were rendered between mid-November 1984 and December 1987.

**4.** Counsel's papers indicated a request of use of a multiplier of approximately 1.11 the lodestar amount. That multiplier was based on a lodestar figure that included paralegals' time charges, which may not be included. *See* discussion *supra* at pages 364–66. The court presumes counsel desires to recover the total amount requested, regardless of the actual multiplier applied.

take the case because there was little or no prospect of earning a fee"), *quoted in Delaware Valley II*, — U.S. at — n. 12, 107 S.Ct. at 3089 n. 12. Enhancement should occur only in "exceptional cases." *Delaware Valley II*, — U.S. at —, 107 S.Ct. at 3089; *see Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–50. Plaintiffs have failed to submit any evidence on this point. Because plaintiffs have failed to meet their burden, no multiplier can be applied based on the contingent nature of counsel's representation.

As stated previously, normally the quality of an attorney's representation is not a proper basis for the award of a multiplier. Yet, even under *Blum*, the court is permitted, in "rare" cases, to reward "superior" legal representation provided by attorneys. 465 U.S. at 899, 104 S.Ct. at 1549; *see Delaware Valley I*, 478 U.S. at —, 106 S.Ct. at 3098; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d at 222; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d at 168, *quoted in In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. at 1296. None has been demonstrated here. *Cf. In re Warner Communications Sec. Litig.*, 618 F.Supp. at 749 (plaintiffs presented a lead counsel team which functioned as a single law firm and had the cooperation of eighteen additional firms from around the country); *In re Gen. Pub. Utils. Sec. Litig.*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 99,566 at 97,233 (D.N.J.1983) (allowing lodestar multiplier of 3.45 where counsel, including Abbey & Ellis, needed to acquire a "working understanding" of "technical complexities of the nuclear energy industry [and] the regulatory maze within which it operated").

Looking at these factors, the court concludes that no multiplier is warranted in this case. Counsel is adequately compensated by the use of current billing rates. Fully one-third of the work performed in this case occurred in 1985, before associates' salaries generally in the metropolitan area were increased by almost twenty percent. Billing rates were accordingly lower at that time. For example, one of counsel's associates billed over ninety-five percent of his total time to this matter in 1985, when he was still considered a first-year associate. Yet, all of his time is being allowed at the billing rate of a third year associate in 1988, not 1985.[5] Under all the circumstances, the fee awarded is reasonable.

**B. Expenses**

 Counsel has submitted a breakdown by category of expenses incurred. The expenses appear reasonable to the court. They will be allowed in the amount of $5,000.

### CONCLUSION

The proposed settlement of this class action is approved. Plaintiffs' counsel are awarded fees in the sum of $107,843.75, and compensation for expenses in the sum of $5,000. The court will consider reimbursement of paralegal expenses upon presentation of the proper documentation.

SO ORDERED.

---

5. Indeed, the rate assigned is very favorable. In *Friedlander v. Barnes*, [1986–87 Transfer Binder] Fed.Sec.L.Rep. para. 92,754 (S.D.N.Y.1986), the court deemed the same rate applied here for third year associates ($150) appropriate for a person who was associated with his firm for seven years, after having served as a law clerk to Judge Stewart of this court. *See id.* at 93,677.