TRUCK DRIVERS LOCAL UNION NO. 671

v.

UNITED PARCEL SERVICE, INC.

Civ. No. H81–410.

United States District Court, D. Connecticut.

Nov. 20, 1981.

Norman Zolot, Hamden, Conn., for plaintiff.

Murray S. Freeman, David E. Watson (Nutter, McClennen & Fish) Boston, Mass., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

### Introduction

These cross-motions for summary judgment present the question whether an arbitration award should be vacated because the arbitrator's oath was administered by a person not authorized to administer oaths under Connecticut law. The arbitrator had found that defendant employer had just cause to discharge two members of plaintiff union on the ground that they had been drinking alcoholic beverages during their lunch period. Statement of Material Facts ¶¶ 5, 10, 11 (filed Sept. 30, 1981). The union urges the court to apply Connecticut General Statutes ("C.G.S.") § 52–414, which requires that arbitrators be sworn, in conjunction with C.G.S. § 1–24, which identifies the persons who may administer such oaths, including members of the Connecticut Bar in their capacities as commissioners of the Superior Court. In this case, the arbitrator's oath was administered by a lawyer not admitted to the Connecticut Bar; therefore, he was not a person falling within the scope of C.G.S. § 1–24. Statement of Material Facts ¶¶ 8, 9. Relying on C.G.S. § 52–414 and the Connecticut cases applying it, plaintiff seeks to have the arbitration award vacated. *See Reinke v. Greenwich Hospital Association*, 175 Conn. 24, 392 A.2d 966 (1978) (affirming vacatur of arbitration award when arbitrator had not taken an oath).

Defendant replies that the use of C.G.S. §§ 1–24 and 52–414 in these circumstances is barred by the principles of federal labor law set forth in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In particular, defendant argues that "the interests of a uniform federal law to govern arbitrations under collective bargaining agreements would be poorly served by the incorporation of technical state oath requirements for the conduct of such proceedings." Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment 11 (filed Sept. 30, 1981). For that reason, defendant argues that "the application of the oath requirement of Connecticut law should be held preempted, the [plaintiff's] claim should be rejected, and the [defendant] should be entitled to a judgment on the merits as a matter of law." *Id.*

The parties agree that there is no genuine issue as to any material fact, and that the only issues presented are of law. *Id.* at 2; Plaintiff's Memorandum in Support of its Motion for Summary Judgment to Vacate an Arbitration Award at 1 (filed Oct. 2, 1981). Having reviewed the parties' joint Statement of Material Facts, the memoranda of counsel, and applicable principles of law, the court concludes that the present case is governed by *West Rock Lodge No. 2120, International Association of Machinists v. Geometric Tool Co. ("West Rock Lodge")*, 406 F.2d 284 (2d Cir. 1968). In that case, the district court had vacated

an arbitration award because the arbitrator had failed to issue his decision within sixty days of submission, as required by the Connecticut arbitration statute, C.G.S. § 52–416. Our Court of Appeals reversed, holding that it would be inappropriate to incorporate the Connecticut statute into the federal scheme of labor-management relations.

The Court noted at least four factors in support of its holding. First, it recognized the "very strong need for federal uniformity," and concluded that adoption of the Connecticut arbitration rule would undermine achievement of that goal. *West Rock Lodge, supra,* 406 F.2d at 286. Second, the Court stated that "we ought not to accept an arbitration rule which encourages post-award technical objections by a losing party as a means of avoiding an adverse arbitration decision." *Id.* Third, the court stated that "it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award[.]" *Id.* Fourth, although the arbitrator had not is-

sued his decision within the time prescribed by Connecticut law, the court concluded that the award should not be vacated where "there is no showing that actual harm to the losing party was caused by the delay." *Id.* Each of these considerations counsels strongly against vacating the arbitration award in the present case.

### *The Teaching of West Rock Lodge*

### I.

■ Plaintiff has cited no federal rule regarding oath-taking in labor arbitrations. To adopt the various state rules on this issue, therefore, would lead inevitably to disuniformity in the resolution of labor disputes. Moreover, the arbitration in the present case was conducted pursuant to a collective bargaining agreement that covers six New England states. Statement of Material Facts ¶ 3. To adopt a different rule regarding oaths in each of the states in which such arbitrations occur would lead to disuniformity in the administration of even this one collective bargaining agreement.[1]

---

1. The collective bargaining agreement in the present case covers the six New England states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont. A review of the statutes which each of those states, other than Connecticut, have adopted regarding oath-taking reveals the extent of the disuniformity that would result from application of state rules in these circumstances.

Maine has adopted the Uniform Arbitration Act, and made it applicable to "arbitration agreements between employers and employees or between their respective representatives, unless otherwise provided in the agreement." 14 M.R.S.A. § 5927. Although the Uniform Arbitration Act specifically confers on arbitrators the authority to administer oaths to the witnesses who appear before them, 14 M.R.S.A. § 5933, it nowhere requires that the arbitrators themselves be sworn, *see* 14 M.R.S.A. § 5929 (on appointment of arbitrators). Moreover, the *Uniform Arbitration Act* enumerates several grounds for vacating arbitration awards. Errors in oath-taking are not included among those grounds. 14 M.R.S.A. § 5938.

In Massachusetts, arbitration proceedings which are conducted pursuant to collective bargaining agreements are governed by M.G.L.A., c. 150C, §§ 1–16. The applicable statutory provisions include no requirement that arbitrators be sworn, *see* M.G.L.A., c. 150C, §§ 3, 4 (on powers and method of appointment of arbitrators). M.G.L.A., c. 150C, § 11 enumerates the

grounds for vacating arbitration awards. Errors in oath-taking are not included among those grounds.

In New Hampshire, arbitration proceedings which are compelled by collective bargaining agreements are governed by N.H.R.S.A. 542:1–10, if "such agreement specifically provides that it shall be subject to the provisions of this chapter," N.H.R.S.A. 542:1. The applicable statutory provisions do not require that arbitrators be sworn, *see* N.H.R.S.A. 542:4 (on appointment of arbitrators). As in the other states which regulate arbitration proceedings, the New Hampshire statute does not include an error in oath-taking among its enumerated grounds for vacating an arbitration award. *See* N.H.R.S.A. 542:8 (on grounds for vacating arbitration awards).

Rhode Island is the only other state covered by this collective bargaining agreement which, like Connecticut, requires that arbitrators be sworn. R.I.G.L.A., §§ 28–9–1 to 28–9–26, govern the conduct of arbitration proceedings which have been compelled by a collective bargaining agreement. R.I.G.L.A. § 28–9–10 requires that "[b]efore hearing any testimony, arbitrators selected as prescribed in this chapter must be sworn, by an officer authorized by law to administer an oath[.]" In Rhode Island, unlike Connecticut, the authority to administer oaths does *not* extend to local attorneys, *qua* attorneys. *See* R.I.G.L.A. § 36–2–1 (on persons who "may administer oaths anywhere within the

Such disuniformity would inevitably lead to greater complexity and uncertainty in administering the collective bargaining agreement. *See International Union, U.A.W. v. Hoosier Cardinal Corp. ("Hoosier Cardinal"),* 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966) ("The need for uniformity ... is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it."). In the circumstances of this case, there is a strong need for federal uniformity.

## II.

Plaintiff's objection to the arbitration award is entirely technical. It nowhere challenges the weight of the evidence. Nor does it dispute the arbitrator's interpretation of either applicable law or the terms of the collective bargaining agreement. Moreover, the arbitrator was sworn, but by a member of the Massachusetts Bar. Thus

state"); R.I.G.L.A. § 36–2–2 (on persons who "may administer oaths within the respective counties and towns for which they may be elected or appointed to office").

Finally, Vermont does not regulate the conduct of private arbitration proceedings. The state has created a Board of Labor Mediation and Arbitration. The enabling statute for that Board provides, however, that its jurisdiction shall not extend to private arbitrations, unless the parties involved specifically request it. *See* 21 V.S.A. § 541(b). The enabling statute for the State Board of Labor Mediation and Arbitration includes no provisions regarding oath-taking.

This survey indicates the variety of approaches to oath-taking adopted by the six New England states subject to this collective bargaining agreement. By requiring that arbitrators be sworn, and permitting attorneys who have been admitted to its Bar to administer the required oath, Connecticut is unique. Rhode Island also requires that arbitrators be sworn, but it does not permit local attorneys, *qua* attorneys, to administer the oath. None of the other states considered here requires that arbitrators be sworn. None of these states provides, by statute, that an error in the procedure by which the arbitrator takes an oath shall constitute a ground for vacating the arbitrator's award.

the long-standing public concern for oath-taking, to which plaintiff alludes, has been satisfied. *See* Plaintiff's Memorandun· in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment and Brief in Support Thereof ("Plaintiff's Reply Memorandum") 6 n.3 (filed Oct. 9, 1981). To adopt the approach urged by plaintiff, therefore, would simply encourage losing parties to lodge technical objections to arbitration awards that otherwise are uncontested. That result would contravene the teaching of *West Rock Lodge, supra.* Cf. *Tomczak v. Erie Insurance Exchange,* 268 F.Supp. 185, 189–190 (W.D.Pa.1967) (enforcing insurance arbitration award; finding that objection to award based on arbitrator's failure to issue the award within the time specified by applicable rules was "hypertechnical"; and concluding that if delay "is deemed an irregularity, it was de minimus [sic] and to accede to [the objection] would visit a harsh and unwarranted penalty upon the [prevailing party at arbitration] who was not in any way to blame.").[2]

**2.** The Supreme Court has implicitly adopted the policy of discouraging technical objections to arbitration awards. In *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), certain employees had been discharged for dishonesty. They then challenged the discharge at arbitration, as provided in the collective bargaining agreement, and were represented by union officials at the arbitration proceedings. After the arbitrators upheld the discharge, the employees moved to vacate that decision, arguing that the union had breached its duty of fair representation by pressing the employees' cause at arbitration in only a perfunctory manner, and, in particular, by failing to discover certain exculpatory evidence. The District Court dismissed the employees' action as against both the employer and the union. The Court of Appeals for the Sixth Circuit reversed the dismissal as against the union only. The Supreme Court reversed the dismissal as against the employer as well, holding that if the employees could prove an erroneous discharge and a breach of the duty of fair representation, then the employees would be entitled to a remedy against the employer, as well as against the union.

The Court found that the error in the arbitration which might warrant a reopening of the proceedings was not the failure of the arbitrators to consider exculpatory evidence, but the

### III.

Plaintiff concedes that it did not object to the form of the arbitrator's oath-taking until after the adverse arbitration award had been issued. Plaintiff's Reply Memorandum 4. To justify this omission, it notes two facts. First, "neither party had knowledge of the requirement [of C.G.S. § 1–24] before the award was rendered." *Id.* Second, "the plaintiff union was represented at the arbitration hearing by a union official, not by an attorney." *Id.* at 10. Far from supporting plaintiff's position, however, these facts weaken it. Parties are often not represented at arbitration proceedings by counsel. The rule proposed by plaintiff would create a merely technical basis for challenging arbitration awards. This would inevitably force the parties to be represented at future arbitration proceedings by attorneys. That, in turn, would increase the cost, complexity, and duration of such proceedings. That result would conflict with the settled policy that labor disputes should be speedily and efficiently resolved through arbitration. *See Hoosier Cardinal, supra,* 383 U.S. at 707, 86 S.Ct. at 1114. (". . . relatively rapid disposition of labor disputes is a goal of federal labor law."); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960) ("The present federal policy is to promote industrial stabilization through the collective bargaining agreement. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement.").

### IV.

Finally, plaintiff has shown no harm, either to itself or to a recognized public interest, as a result of the failure to have a Connecticut attorney administer the arbitrator's oath. It has not objected to either the procedures followed at arbitration or to the substance of the decision. In any event, the public interest in oath-taking and in the probity of arbitrators has been vindicated because the arbitrator did take an oath; because there is no claim that he failed to act entirely in accordance with the oath; and because the arbitrator is a member of the Bar of the Commonwealth of Massachusetts and thus subject to the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, adopted by the Supreme Judicial Court of Massachusetts, including those which enjoin "conduct involving dishonesty, fraud, deceit or misrepresentation," S.J.C. Rule 3:22, DR 1–102(A)(4), *appearing in* 359 Mass. 796, 798 (1972).

The faulty oath-taking in this case arguably placed the arbitrator in a position akin to that of an arbitrator who, for some rea-

---

apparent breach of the union's duty to search diligently for such evidence. Arbitration proceedings, the Court recognized, cannot be expected to be error-free. Had the arbitration been conducted "within some minimum levels of integrity," there would have been no basis for relitigation. The Court observed, 424 U.S. at 571, 96 S.Ct. at 1059:

Petitioners are not entitled to relitigate their discharge merely because they offer newly discovered evidence that the charges against them were false and that in fact they were filed without cause. *The grievance processes cannot be expected to be error-free.* The finality provision [of the collective bargaining contract] has sufficient force to surmount occasional instances of mistake. But it is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the [u]nion has been dishonest, in bad faith, or discriminatory; for in that event error and

injustice of the grossest sort would multiply . . . . Congress has put its blessing on private dispute settlement arrangements provided in collective agreements, but *it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity.* In our view, enforcement of the finality provision where the arbitrator has erred is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings.

(emphasis supplied).

In the present case, plaintiff does not claim that the arbitrator or any other party to the arbitration proceedings acted dishonestly or in bad faith. The arbitrator's error was not one of judgment, but only in the failure to comply fully with technical formalities prescribed by state statutes. *Hines v. Anchor Motor Freight, Inc., supra,* counsels against relitigation in these circumstances.

son, is unable to take an oath. *See* C.G.S. § 1–23 (specifically providing for an alternative to the normal oath by an appropriate "affirmation" administered in accordance with C.G.S. § 1–24). The ethical duties imposed upon the arbitrator under Massachusetts law, as well as the unquestioned good faith with which he took his oath (however uncertain the formal validity of that oath may have turned out to be under Connecticut law), reinforce the conclusion that whatever public interest there may be in oath-taking by arbitrators has been fully vindicated in this case.

### The Teaching of Other Cases

Having reviewed the cases on which plaintiff relies, the court finds none of them to be binding or persuasive in the present action. *Santos v. District Council of New York*, 619 F.2d 963 (2d Cir. 1980) ("*Santos*"), involving the applicable statute of limitations for enforcing arbitration awards, nowhere mentions *West Rock Lodge*, let alone over-rules it. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) ("*United Parcel Service*"), presented a choice between two possible statutes of limitations for the filing of actions to vacate arbitration awards; there was no dispute that a state statute of limitations would be applied. Neither *Santos* nor *United Parcel Service* involved a state rule of the sort at issue here or in *West Rock Lodge*.

Moreover, to the extent that *United Parcel Service* provides general guidance concerning the judicial treatment of actions to vacate arbitration awards, that teaching is contrary to the position urged by plaintiff here. In *United Parcel Service*, the Supreme Court adopted the shorter of the two state statutes of limitations that were arguably applicable. In adopting the shorter of these periods, the Court recognized, as it had in *Hoosier Cardinal*, that the "relatively rapid disposition of labor disputes" is a "leading" policy of federal law. *United Parcel Service, supra*, 451 U.S. at 63, 101 S.Ct. at 1564. In its discussion, the Court also observed:

Although the present case involves a fairly mundane and discrete wrongful discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. [citation omitted] This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," *could easily become unworkable* if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.

*United Parcel Service, supra,* at 63, 101 S.Ct. at 1564 (emphasis supplied), *quoting United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 578, 80 S.Ct. 1350.

Thus the Supreme Court has recognized the need to ensure that the "system" for administering collective-bargaining agreements be "workable" and that it yield "relatively rapid" results. In the present case, adoption of the state rule concerning oath-taking would lead to greater complexity, uncertainty and delay in arbitration proceedings. Such a result would be inconsistent with the system of grievance and arbitration proceedings contemplated by federal labor law and the Supreme Court.

The other case on which plaintiff principally relies is similarly unavailing here. *Huntington Alloys v. United Steelworkers*, 623 F.2d 335 (4th Cir. 1980), like *West Rock Lodge*, involved a state rule requiring arbitrators to render their decision within a specified period after the close of the arbitration proceedings. In *Huntington Alloys, supra,* 623 F.2d at 339, the Fourth Circuit concluded that the Second Circuit's approach to the incorporation of such state rules "appear[ed] to be unique," and elected not to follow it. Nevertheless, our Court of Appeals has never overruled *West Rock Lodge*. Accordingly, despite any criticism that another court of appeals may have directed at the result or teaching

of *West Rock Lodge*, this court is bound to follow that case. *Southern New England Distrib. Corp. v. Berkeley Finance Corp.*, 30 F.R.D. 43, 49 (D.Conn.1962) (Blumenfeld, J.) ("The fact that contrary views have been expressed by Courts of Appeals for other circuits would not authorize me to reject the reasoning of my own Circuit Court of Appeals."); *Rodriguez v. Coastal Ship Corporation*, 210 F.Supp. 38, 40 (S.D.N.Y.1962) (Weinfeld, J.) (District Court for the Southern District of New York "is bound to follow the holding in [the Second] Circuit."); *see Pan American World Airways, Inc. v. C.A.B.*, 517 F.2d 734, 741 (2d Cir. 1975) (Second Circuit is "not bound by the decision or the rationale" of opinion of the District of Columbia Circuit); *Securities and Exchange Commission v. Shapiro*, 494 F.2d 1301, 1306 n.2 (2d Cir. 1974) (Hays, J.) ("Assuming that these cases [from other circuits] still represent good law, they do not bind this court.").

Plaintiff has cited no federal case which vacated an arbitration award because of a technical error of the sort at issue here. Even the state case on which it relies, *Reinke v. Greenwich Hospital Association*, *supra*, arguably involved a more substantial breach of the duty of an arbitrator to take an oath than that which occurred here—namely, that the arbitrator in *Reinke* took no oath at all.[3] Moreover, the arbitration in *Reinke* settled a medical malpractice claim; it therefore involved none of the considerations of federal law and policy which are present in this case. Nor has plaintiff identified any goal or policy of federal law, either concerning labor-management relations or the conduct of arbitration proceedings, which would be furthered by granting the requested relief.

Federal law seeks prompt and cooperative efforts by company and union to resolve their disputes. Arbitration is central to that scheme. *See United Parcel Service*, *supra*, 451 U.S. at 63, 101 S.Ct. at 1564; *United Steelworkers v. Warrior & Gulf Navigation Co.*, *supra*, 363 U.S. at 578–581, 80 S.Ct. at 1350–1352; *Textile Workers Union v. Lincoln Mills*, *supra*, 353 U.S. at 455, 77 S.Ct. at 917. In determining whether to incorporate a state rule into the federal statutory framework, it is "the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). A state rule "will not be borrowed if [its] application would be inconsistent with the underlying policies of the federal statute." *Id.* Far from promoting fast and effective dispute resolution, the state rule which plaintiff urges the court to adopt would increase the cost, duration and uncertainty of arbitration proceedings. In these circumstances, application of C.G.S. §§ 1–24 and 52–414 would be inconsistent with the underlying policies of federal labor law.[4]

---

**3.** In *Reinke v. Greenwich Hospital Association*, *supra*, the Connecticut Supreme Court affirmed the vacatur of an arbitration award where the arbitrator had not been sworn, and where the parties had agreed orally, but not in writing, to waive the requirement of the oath. C.G.S. § 52–414 clearly requires that arbitrators be sworn or that the requirement of an oath be waived by the parties in writing. However, the Connecticut arbitration statute nowhere states that, where the only error has been the failure of the arbitrator to be sworn or the failure of the parties to waive in writing the requirement of an oath, the only appropriate judicial remedy is to vacate the arbitrator's award. C.G.S. § 52–418 enumerates the grounds for vacating an arbitration award. Despite the requirement in C.G.S. § 52–414 that arbitrators be sworn, § 52–418 does not by its terms include an error in oath-taking as one of the grounds upon which an arbitration award may be vacated. Thus, in cases where there has been an error in oath-taking, vacatur of the arbitration award does not appear to be compelled by the language of the Connecticut statute. As a matter of federal labor law, this court shall not vacate an award simply because the arbitrator was not sworn pursuant to C.G.S. §§ 1–24 and 52–414. Accordingly, the court need not reach the question of whether, as a matter of state law, vacatur of the arbitration award is the only appropriate judicial remedy in these circumstances, and the court intimates no view on that question.

**4.** It is uncontested that the court's jurisdiction in this case rests on Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). *See* Petition for Removal ¶ 2 (filed June 8, 1981); Plaintiff's Memorandum in Sup-

## Conclusion

The parties have agreed that there is no genuine issue as to any material fact. For the reasons stated above, the court finds, pursuant to Rule 56, Fed.R.Civ.P., that defendant is entitled to judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment to vacate the arbitration award is denied, and defendant's cross-motion for summary judgment dismissing the complaint is hereby granted.

The Clerk of the Court shall enter judgment forthwith.

No costs.

It is so ordered.

port of its Motion for Summary Judgment to Vacate an Arbitration Award at 1 (filed Oct. 2, 1981); *see also* Statement of Material Facts ¶¶ 2, 3. In *Textile Workers Union v. Lincoln Mills, supra*, 353 U.S. at 456, 77 S.Ct. at 918, the Supreme Court "conclude[d] that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." One policy which is clearly stated in these labor laws is that of promoting speedy, voluntary, and cooperative efforts to resolve disputes between labor and management. *See* 29 U.S.C. § 151 ("It is declared to be the policy of the United States to ... encourag[e] the practice and procedure of collective bargaining[.]"); 29 U.S.C. § 141(b) ("It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, [and] to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other[.]"). The courts have recognized the importance of arbitration in promoting these policies. *See United Parcel Service, supra; United Steelworkers v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 578–581, 80 S.Ct. at 1350–1352.