## CHRIST THE KING REGIONAL HIGH SCHOOL, Plaintiff,

v.

**Edward R. CULVERT, individually and as Chairman of the New York State Labor Relations Board, and John J. Fanning, individually and as a member of the New York State Labor Relations Board, an agency of the Department of Labor of the State of New York, Defendants,**

and

**Lay Faculty Association, Local 1261, American Federation of Teachers, AFL–CIO, Intervenor.**

No. 82 Civ. 8233 (VLB).

United States District Court, S.D. New York.

Sept. 30, 1986.

Thomas P. Schnitzler, Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiff.

Evelyn M. Tenenbaum, Asst. Atty. Gen., New York City, for defendants.

Robert M. Gordon, Gordon & Librie, New York City, for intervenor.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiff Christ the King Regional High School ("Christ the King" or "the School") has moved for summary judgment pursuant to F.R.Civ.P. 56, seeking a declaratory judgment that defendant New York State Labor Relations Board ("SLRB")[1] cannot

---

1. Although plaintiff has also brought suit against Messrs. Culvert and Fanning individually and in their capacities as chairman and member of the New York State Labor Relations Board respectively, I shall treat the SLRB as the

assert jurisdiction over the School and the lay teachers it employs, and a permanent injunction prohibiting the SLRB from asserting such jurisdiction.

Defendant SLRB has cross-moved for summary judgment on the basis that the application of the New York State Labor Relations Act ("SLRA" or "the Act") to lay teachers in parochial schools violates neither the Free Exercise nor the Establishment Clauses of the First Amendment, and that the SLRB is not preempted by the National Labor Relations Act ("NLRA") from exercising jurisdiction over church-operated schools. The defendant-intervenor, the Lay Faculty Association, Local 1261 ("Association") has joined in the defendant's cross-motion.

For the reasons that follow, I deny plaintiff's motion, grant defendant's cross-motion, and dismiss the complaint.

## I.

Since this case has been submitted, the Supreme Court opinion has been rendered in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* — U.S. —, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

In that case, Dayton Christian Schools, Inc. ("Dayton"), an elementary and secondary school which had been formed by two churches, sought to enjoin, on Free Exercise and Establishment Clause grounds, a pending state administrative proceeding against it.

Each member of Dayton's staff was required to be a born-again Christian and to subscribe to various religious tenets. A teacher who had duly subscribed to those tenets was terminated, and filed a complaint with the state Civil Rights Commission, alleging sex discrimination. The Commission determined that there was probable cause to believe that the teacher was discriminated against on the basis of her sex. It initiated formal administrative proceedings when the school failed to respond, either by acquiescence or by counterproposal, to a proposed conciliation agreement and consent order.

Dayton then sought, in federal court, "a permanent injunction of the state proceedings on the ground that any investigation of Dayton's hiring process or any imposition of sanctions for Dayton's nonrenewal or termination decisions would violate the Religion Clauses of the First Amendment." *Id.,* 106 S.Ct. at 2722. The Commission moved to dismiss, urging abstention but also defending its action on the merits.

The district court refused to issue an injunction, "on grounds that any conflict between the First Amendment and the administrative proceedings was not yet ripe, and that in any case the proposed action of the Commission violated neither the Free Exercise nor the Establishment Clause of the First and Fourteenth Amendments." *Id.,* 106 S.Ct. at 2720. The Sixth Circuit reversed. It held that "the exercise of jurisdiction and the enforcement of the statute would impermissibly burden appellees' rights under the Free Exercise Clause and would result in excessive entanglement under the Establishment Clause." *Id.*

The Supreme Court reversed, "holding that the District Court should have abstained under our cases beginning with *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971)." *Id.*

On the authority of *Dayton Christian Schools, Inc.* I should therefore abstain from deciding the First Amendment issues, if a request for such abstention has been duly presented.

While abstention is adverted to in SLRB's answer, it has not been urged in the argument with respect to these motions, except in a post-submission letter reference to the *Dayton Christian Schools, Inc.* case. I shall, therefore, deal with the motions on the merits.

## II.

Christ the King, a school affiliated with the Roman Catholic Church,[2] is located in

primary defendant for the purposes of this motion.

Middle Village, Queens. It has an enrollment of approximately 1800 students. The school employs both religious and lay teachers, and both secular and religious subjects are taught there.

Plaintiff stresses Christ the King's religious orientation: its students are required to take four years of religion and to attend mass; crucifixes and other religious symbols are displayed in classrooms and in hallways; the school has a full-time spiritual director available to students; there is a chapel on the premises where mass is conducted daily; and the school's "Spiritual Director and other members of the faculty (both lay and religious) encourage students and faculty during homeroom to communicate with God by completing a 'working contract'".

Defendant-intervenor Association contests the so-called "religious mission" of the school. It insists that no effort is made to require teachers of religion to conform to Catholic doctrine; that the school does not require students to attend mass; and that students are not encouraged to complete so-called "working contracts." Lay teachers were hired without regard to their religion, according to the Association, and a number of non-Catholic lay teachers worked at the school for many years. The Association notes that during the 1980–81 academic year, the last in which members of the Association were at the school, all but one of the members of the Board of Trustees were laymen and there were some 105 lay teachers, as against only four teachers who were members of religious communities. The Association asserts that the school continues to employ lay teachers without regard to religion.

Seventy-three lay teachers, represented by the Association, filed individual unfair labor practice charges against the school with the SLRB on February 18, 1982. They alleged that the school had unlawfully refused to bargain with the Association and had unlawfully discharged members of the school's faculty in violation of the SLRA.

The SLRB issued a formal complaint against the school on October 29, 1982, alleging that the school had violated the SLRA. Specifically, the complaint alleged that "[s]ince on or before September 3, 1981, [the school] ha[d] failed and refused, and continues to fail and refuse, to meet, confer, discuss and negotiate in good faith with the Association for the purposes of collective bargaining...." It further alleged that the school discharged 60 lay employees and refused to reinstate them because they engaged in concerted activities for collective bargaining purposes.[3]

On December 1, 1982 the school moved before the SLRB for an order dismissing the complaint on the basis that the National Labor Relations Board ("NLRB") had exclusive jurisdiction over the school. This action was commenced on December 10, 1982.[4] The SLRB denied the motion to dismiss on January 6, 1983. At the same time, however, the SLRB granted plaintiff's motion to postpone the SLRB proceedings until I issued a decision in this action.

Between 1979 and 1982, the Association had filed four unfair labor practice charges against the plaintiff with the NLRB. None of these charges involved any religious issues,[5] and all were either settled or with-

---

**2.** In 1976, the Roman Catholic Diocese of Brooklyn entered into an agreement with Christ the King, conveying title to the land where Christ the King is located to plaintiff so long as the plaintiff continued to operate a Roman Catholic high school on the premises.

**3.** The complaint issued by the SLRB encompassed all of the charges filed by the Association except for 13 charges which were withdrawn because the 13 individual teachers involved showed no interest in pursuing them.

**4.** Plaintiff in this action seeks to enjoin the SLRB from proceeding with its administrative hearing to determine whether the school unlawfully discharged members of its faculty in violation of the SLRA. On February 16, 1983 the SLRB filed its answer herein, and on March 7, 1983 the Association intervened.

**5.** The charges alleged that the school had (1) refused to provide the Association with a copy of its pension plan, (2) promulgated a calendar establishing the days of work for the 1979–80

drawn. On December 17, 1982 the Association filed a petition with the NLRB seeking an advisory opinion as to whether plaintiff, because of its religious character, would be exempt from the jurisdiction of the NLRB. The NLRB refused to issue an advisory opinion and dismissed the petition.[6]

### III.

Plaintiff contends that the SLRB's assertion of jurisdiction over plaintiff violates the Free Exercise and Establishment Clauses of the First Amendment to the Constitution, and that even if there is no constitutional bar the National Labor Relations Act ("NLRA") preempts the SLRB from asserting jurisdiction.

Plaintiff argues that I must reach the First Amendment issues that are raised because amendments to the SLRA provide for SLRB jurisdiction over employees of church-operated schools. It urges that the SLRA and the NLRA are fundamentally similar, and that I should follow the Supreme Court's reasoning on the constitutional issues as raised in NLRA cases.

Invoking a three-tier analysis employed by the Supreme Court to resolve Free Exercise Clause questions, plaintiff argues: (1) that the nature and extent to which the SLRB's assertion of jurisdiction burdens the free exercise of the plaintiff's religious beliefs is clear; (2) that the state cannot justify the burden which the assertion of jurisdiction by the SLRB will place on the religious liberty of plaintiff; and (3) that accommodation by the state to plaintiff's Free Exercise concerns would not unduly interfere with the governmental interest of maintaining labor peace through the furtherance of collective bargaining.

Plaintiff invokes another three-tier analysis employed by the Supreme Court in contending that the SLRB assertion of jurisdiction violates the Establishment Clause. Plaintiff concedes (1) that the SLRA has a secular purpose and (2) that its primary purpose is not to advance or to inhibit religion, but it vigorously asserts (3) that the SLRA fosters an excessive entanglement of government with religion. Specifically, the school maintains that the activity being burdened is pervasively religious, and that the SLRB's ongoing supervision would inevitably focus on areas where religious and secular elements are inextricably intertwined.

Plaintiff's alternative position, assuming I find that there is no constitutional bar to the SLRB's assertion of jurisdiction, is that the NLRB retains a preemptive jurisdiction over church-operated schools.

Defendant SLRB asserts that the SLRA is concerned only with the secular issue of anti-union conduct, and that neither the SLRA's requirements nor the practices of the SLRB result in excessive entanglement between church and state. It claims further that the procedural safeguards included in the SLRA would completely protect plaintiff's First Amendment rights, and that the SLRB's activities with respect to lay teachers in parochial schools threaten no more entanglement than do other statutes which regulate employees in religious institutions.

The SLRB contends that application of the SLRA to relations between plaintiff and the Association will not violate the Free Exercise Clause. It further contends that its procedures and practices ensure that the SLRA will never place more than a minimal burden on religion and will not

school year without consulting the Association, (3) failed to provide a list of the names, addresses and salaries of the members of the bargaining unit to the Association, and (4) refused to negotiate with the Association.

**6.** The Board stated:
  [T]he Board's advisory opinion proceedings are designed primarily to determine questions as to the applicability of the Board's discretionary jurisdictional standards to an employ-er's "commerce" operations. The entire submission by the parties herein basically raises the issue whether the Employer, because of its religious character, is exempt from the Board's jurisdiction under the rule of *N.L.R.B. v. The Catholic Bishop of Chicago, supra.* This issue does not fall within the intendment of the Board's advisory opinion rules. We shall, therefore dismiss the petition herein.
  266 NLRB 738 (1983) (footnotes omitted).

require plaintiff to take any action inconsistent with its religious beliefs. Defendant SLRB argues that the State has a particularly compelling rationale for applying the good faith bargaining requirement to lay teachers at Catholic schools; in the fall of 1984 there were 370,833 students and 28,203 teachers in Catholic elementary and secondary schools in New York State. The creation of an exemption for church-affiliated schools would, according to defendant SLRB, seriously undermine the state's interests.

Defendant SLRB asserts that it is not preempted by the NLRA from exercising jurisdiction over lay teachers at church-operated schools.

Defendant-intervenor Association, in its submissions, joins in the arguments of defendant SLRB.

### IV.

■ The threshold question which I address is the extent to which the Second Circuit's decision in *Catholic High School Association of the Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161 (2d Cir.1985) is dispositive of the motions currently before me.

In *Catholic High School Ass'n*, the Second Circuit cast the issue as whether "the Religion Clauses of the First Amendment made applicable to the states by the Fourteenth Amendment prohibit the New York State Labor Relations Board from exercising jurisdiction over the labor relations between parochial schools and their lay teachers." 753 F.2d at 1163. It recognized the issue as one of first impression in the Second Circuit, and one expressly unresolved by the Supreme Court in *NLRB v. Catholic Bishop*, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979).[7]

The New York State Labor Relations Act, which as originally enacted in 1937 did not apply to employees of religious or educational organizations, was amended in 1968 to bring these employees within its scope. One year later, the lay teachers' union petitioned the SLRB for certification as the exclusive bargaining representative of the teachers in the 11 "church-operated" schools managed by the Catholic High School Association. After a series of collective bargaining agreements governing the terms and conditions of lay teachers' employment, the union in 1980 filed various unfair labor practice charges against the Catholic High School Association. *See* 753 F.2d at 1163–64. None of the charges raised religious issues.

After investigating the merits of the union's case, the SLRB issued a formal complaint. The Catholic High School Association then brought suit seeking a declaratory judgment and injunctive relief against the SLRB. It challenged the SLRB's assertion of jurisdiction, positing constitutional and preemption arguments analogous to those made by Christ the King in the instant case. It moved for summary judgment and the SLRB cross-moved. The district court found no preemption by the NLRA, but granted plaintiff Catholic High School Association's motion, concluding that the SLRB's assertion of jurisdiction violated the Establishment Clause. *See* 573 F.Supp. 1550 (S.D.N.Y.1983) (Lasker, J.). Judge Lasker enjoined the SLRB from continuing its proceedings against the Catholic High School Association.

The Second Circuit, which found that there was a justiciable controversy presented, reversed and remanded with directions to enter summary judgment in favor of the SLRB, permitting it to exercise jurisdiction over the plaintiff. The Court of Appeals affirmed Judge Lasker's finding that there was no preemption by the National Labor Relations Act: the SLRB validly asserted jurisdiction "because Congress did not indicate that the NLRB had jurisdiction." 753 F.2d at 1165 n. 2. The Second Circuit made reference to "the familiar three-pronged" test which the Supreme Court often found

---

**7.** In *Catholic Bishop,* the Supreme Court deemed the issue to be a "difficult and sensitive" question. 440 U.S. at 507, 99 S.Ct. at 1322.

useful in determining whether there have been violations of the Establishment Clause, entailing inquiry into " '[1] [W]hether the challenged law or conduct has a secular purpose, [2] whether its principal or primary effect is to advance or inhibit religion, and [3] whether it creates an excessive entanglement of government with religion.' " *Id.* at 1166 *citing Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984).

Because the parties did not dispute that the SLRA has a secular purpose and that its primary effect is not to advance or inhibit religion, the Second Circuit confined its Establishment Clause inquiry to whether the Act violated the Clause "because it threatened to produce an excessive administrative entanglement of government with religion." *Catholic High School Ass'n,* 753 F.2d at 1166.

Judge Lasker had found the threat of such entanglement on two grounds: he found an "imminent possibility" that the schools would have to bargain with lay teachers on religious subjects; and he found that in the event of an alleged unlawful discharge, the SLRB would have to determine whether any religious reason offered as an explanation of the discharge was a valid aspect of church doctrine.

The Second Circuit disagreed. With respect to the degree of entanglement that results from the duty to bargain over secular terms and conditions of employment, the Second Circuit concluded that "the duty to bargain does not involve excessive administrative entanglement between church and state." *Id.* at 1168. The district court "misapprehended the degree of supervision that the duty to bargain entails, and the nature of the state intrusion into the bargaining process." *Id.* at 1166. The Court of Appeals stated that the SLRB's supervision over the collective bargaining process is neither "comprehensive nor continuing" as it would have to be to necessitate a finding of entanglement, nor is it intrusive: the SLRB does not initiate unfair labor practice proceedings and an employer's good faith is put in issue only if a union or

individual files a charge; the various unfair labor practices specified in the SLRA are completely secular; an SLRB labor relations examiner has to limit his investigation to those issues that relate directly to the practices set forth in charges; and an order of the SLRB is not self-enforcing, and a "church-operated" school may refuse to comply and raise First Amendment defenses. 753 F.2d at 1167.

With respect to inquiry into the reasons for unlawful discharges, the Court of Appeals conceded that the First Amendment "prohibits the [SLRB] from inquiring into an asserted religious motive to determine whether it is pretextual," but found that this limitation does not preclude the SLRB from asserting jurisdiction. *Id.* at 1168. The SLRB would "still [be] free to determine, using a dual motive analysis, whether the religious motive was in fact the cause of the discharge." *Id.*

The Second Circuit also concluded that the Free Exercise Clause did not bar the SLRB from asserting jurisdiction over labor relations between the Catholic High School Association and the union. It balanced "the burden the state imposes on the [plaintiff's] exercise of its religious beliefs ... against the State's interests in enforcing the Act." *Id.* at 1169. In this balancing it considered whether the claims presented were religious or secular; whether the "State action burdened the religious exercise"; and whether "the State interest was sufficiently compelling to override the constitutional right of free exercise of religion." *Id.* Ultimately it determined that "the constitutionality of the [SLRB's] assertion of jurisdiction must only be considered with respect to its direct effect on religious beliefs. To find that an enactment violates the right to free exercise of religious beliefs, 'it is necessary ... for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.' " *Id.* at 1170, *quoting School District v. Schempp,* 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963). The Court of Appeals also considered whether a finding of SLRB

jurisdiction might "impermissibly chill free exercise rights", and concluded that it would not. The "indirect and incidental burden on religion" caused by the assertion of jurisdiction over employees of religious organizations was justified "by the State's compelling interest in collective bargaining." *Id.* at 1171.

The issues in *Catholic High School Association* are identical to the issues before me. Its holding directly governs the instant case.

### V.

Plaintiff urges this court to revisit the question posed in *Catholic High School Ass'n* and to reject the Second Circuit's decision on the grounds that (1) the Second Circuit misapprehended a basic premise of collective bargaining, (2) it did not have the benefit of *Aguilar v. Felton,* — U.S. —, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), and (3) in any event this court should consider the question of the exercise of jurisdiction over religious employers in light of the conflict between the circuits on this question. These arguments are not persuasive.

Plaintiff attempts to distinguish *Catholic High School Ass'n* as a precedent binding upon me on the ground that the Second Circuit rendered its decision in that case prior to, and hence without the benefit of the guidance of, the opinion in *Aguilar v. Felton,* — U.S. —, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), in which the Supreme Court reaffirmed the objectives of the Establishment Clause. This argument is without merit.

In *Aguilar,* the Supreme Court reviewed, and affirmed, the Second Circuit's ruling (*Felton v. Secretary, United States Department of Education,* 739 F.2d 48 (2d Cir.1984)) that the Establishment Clause was violated when the City of New York used federal funds to pay the salaries of public employees who taught in parochial schools. It is therefore disingenuous to argue that the Second Circuit did not have the benefit of *Aguilar.* While the Supreme Court's rationale in affirming was obviously not available to the Second Cir-

cuit, the Supreme Court specifically endorsed much of the Second Circuit's reasoning. *See, e.g., Aguilar,* 105 S.Ct. at 3238.

Plaintiff urges inconsistencies between the Second Circuit's decisions in *Felton* and *Catholic High School Ass'n.* I decline plaintiff's invitation to assess or resolve these alleged inconsistencies. Resolving them in the manner suggested by plaintiff would require me effectively to reverse the Second Circuit's ruling on the constitutional issues ruled upon by it in *Catholic High School Ass'n.*

A federal district court is bound by the rule of the circuit in which it is located, *see Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, 1512 (S.D.N.Y.1985) (*citations omitted*), and the rule of the Second Circuit on the question before me governs. *See Rodriguez v. Coastal Ship Corp.,* 210 F.Supp. 38, 40 (S.D.N.Y.1962). The decisions of one circuit's court of appeals are not binding in another circuit. *Newsweek, Inc. v. U.S. Postal Service,* 663 F.2d 1186, 1196 (2d Cir.1981), *cert. den.* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982). "[D]espite any criticism that another court of appeals may have directed at the result or teaching of [a case decided by the Second Circuit], this court is bound to follow that case." *Truck Drivers Local Union No. 671 v. United Parcel Service,* 526 F.Supp. 1044, 1049–50 (D.Conn.1981) *aff'd* 697 F.2d 298 (2d Cir.1982). As Judge Blumenfeld has aptly said, "[t]he fact that contrary views have been expressed by Courts of Appeals for other circuits would not authorize me to reject the reasoning of my own Circuit Court of Appeals." *Southern New England Distributing Corp. v. Berkeley Finance Corp.,* 30 F.R.D. 43, 49 (D.Conn.1962). A "district court cannot shape decisional law by overruling precedent, since it lacks the power to do so, but instead merely applies the law as it finds it." *Kennard v. UPS, Inc.,* 531 F.Supp. 1139, 1142 (E.D.Mich.1982). Thus I may not choose to follow the precedent set forth by some other circuit court of appeals which conflicts with a direct ruling by the

Second Circuit, nor may I assess the Second Circuit's understanding of collective bargaining.

These principles mandate that I apply the Second Circuit's decision in *Catholic High School Ass'n.* In that decision the Second Circuit has specifically ruled on the preemption issue, and on the issue of the exercise of jurisdiction by the SLRB over relationships between lay teacher employees and church-operated or church-related schools. On the authority of that decision, I find that there is no preemption by the National Labor Relations Act, and that the First Amendment does not prohibit the SLRB from exercising jurisdiction over the labor relations between Christ the King and the Association.

SO ORDERED.