OPINION OF THE COURT
 

 Bellacosa, J.
 

 The New York State Employment Relations Board commenced this proceeding under Labor Law § 707 to enforce its order against appellant Christ the King Regional High School. That order directed the School to bargain in good faith with the Lay Faculty Association (the Union) and to reinstate certain teachers.
 

 Supreme Court granted the Board’s petition and denied the School’s motion to dismiss, and the Appellate Division affirmed (217 AD2d 701). The School appeals as of right on a claimed substantial constitutional issue
 
 (see,
 
 CPLR 5601 [b] [1]). On First Amendment grounds, under the Free Exercise and Establishment Clauses of the United States Constitution, appellant seeks an absolute, threshold exemption from the operation of the New York State Labor Relations Act
 
 (see,
 
 Labor Law § 700
 
 et seq.).
 
 Appellant believes that the State Act should not apply to labor relations between it and the Union.
 

 L
 

 The School is a Roman Catholic secondary school located in Queens County, New York City. Prior to 1976, it had been operated by the Roman Catholic Diocese of Brooklyn. In 1976, however, the Diocese conveyed responsibility and title to appellant, contingent upon the School continuing as a Roman Catholic High School. The School employs lay and religiously affiliated faculty, and teaches both secular and religious subjects.
 

 Also in 1976, the Union began representing the lay faculty at the School. During the spring and summer of 1981, the School administration and the Union met repeatedly to try to negotiate the terms of a collective bargaining agreement. These efforts failed and the Union staged a strike beginning in the fall of 1981. The School discharged the striking workers and ended negotiations. This labor dispute has continued ever since.
 

 The State Employment Relations Board (then called the Labor Relations Board) cited the School for alleged violations of the Labor Relations Act. The Board charged the School with refusing to bargain in good faith, and improperly discharging and failing to reinstate striking employees.
 

 
 *248
 
 The School first challenged the Board in Federal court, asserting that the State Board’s jurisdiction was preempted by the National Labor Relations Act and that its claimed powers intruded upon the School’s constitutional freedom of religion protections. The District Court dismissed the School’s complaint, rejecting both claims
 
 (Christ the King Regional High School v Culvert,
 
 644 F Supp 1490 [SD NY]), and the Second Circuit Court of Appeals affirmed (815 F2d 219,
 
 cert denied
 
 484 US 830), without addressing the First Amendment contention.
 

 Subsequently, the State Board’s complaint was considered by an Administrative Law Judge (ALJ), who rejected the School’s constitutional arguments and ruled against it on a variety of grounds. The recommended relief was that the Board order the School to cease (1) requiring employees to refrain from joining or aiding the Union, (2) discouraging or interfering with membership in the Union through hiring, promotion or any other practices, and (3) refusing to bargain in good faith with the Union. The ALJ recommended additional relief involving reinstatement of teachers and associated remedies. The Board essentially adopted the ALJ’s findings and recommendations and then commenced this Labor Law § 707 proceeding for judicial enforcement of its order. The School, in turn, moved to dismiss the petition, pressing its constitutional claims.
 

 IL
 

 We turn our attention first to the School’s free exercise claim. The United States Supreme Court has articulated a more nuanced free exercise analysis in
 
 Employment Div., Ore. Dept. of Human Resources v Smith
 
 (494 US 872), expressly rejecting its previously utilized balancing test
 
 (id.,
 
 at 883-885 [citing
 
 Sherbert v Verner,
 
 374 US 398, 402-403];
 
 see also, City of Boerne v Flores, —
 
 US —, 117 S Ct 2157 [No. 95-2074, June 25, 1997]). Now, a generally applicable and otherwise valid enactment, which is not intended to regulate religious conduct or beliefs but which may incidentally burden the free exercise of religion, is not deemed to violate the First Amendment
 
 (id.,
 
 at 878-879).
 

 Applying the
 
 Smith
 
 standard to the instant matter, we are satisfied that the State Labor Relations Act properly governs labor relations between the appellant School and its lay faculty
 
 (see, e.g., Matter of Hill-Murray Fedn. of Teachers v Hill-Murray High School,
 
 487 NW2d 857, 863 [Supreme Court of Minnesota applied
 
 Smith,
 
 too, and concluded that the application of its State’s Labor Relations Act to a religious school
 
 *249
 
 and its faculty was not violative of the Free Exercise Clause]). The general applicability of New York State’s Act does not automatically and preemptively abridge appellant’s rights under the Free Exercise Clause of the First Amendment. The State Labor Relations Act is a facially neutral, universally applicable and secular regulatory regimen. It is intended to improve labor relations by encouraging good-faith collective bargaining (see,
 
 Catholic High School Assn. v Culvert,
 
 753 F2d 1161, 1166-1167). The Act in no way implicates religious conduct or beliefs; nor does it purport to impose any express or implied restriction or burden on religious beliefs or activities (see,
 
 e.g., id.,
 
 at 1169-1171 [applying the earlier balancing test to conclude that the then-New York State Labor Relations Board’s exercise of jurisdiction over labor relations between parochial schools and their lay teachers did not constitute a Free Exercise Clause violation]). Appellant’s claimed burden, particularly in contrast to the sweeping threshold immunity that it seeks, is plainly incidental, inchoate and speculative.
 

 Appellant School here, nevertheless, unpersuasively attempts to distinguish
 
 Smith,
 
 in part, by confining its application to circumstances involving criminal statutes. The plain language of
 
 Smith
 
 answers and refutes such an artificial demarcation
 
 (see, Vandiver v Hardin County Bd. of Educ.,
 
 925 F2d 927, 932;
 
 Salvation Army v Department of Community Affairs,
 
 919 F2d 183, 194-195 [quoting
 
 Employment Div., Ore. Dept. of Human Resources v Smith,
 
 494 US 872, 886,
 
 supra]; see also, Matter of Hill-Murray Fedn. of Teachers v Hill-Murray High School,
 
 487 NW2d 857, 863,
 
 supra).
 

 Appellant alternatively urges that the situation presented by this case falls within an exception propounded by
 
 Smith
 
 itself.
 
 Smith
 
 concluded that the standard of general applicability may not apply to "hybrid” situations involving the Free Exercise Clause, when considered in conjunction with other high-ranking constitutional protections, such as freedom of speech and of the press
 
 (Employment Div., Ore. Dept. of Human Resources v Smith, supra,
 
 494 US, at 881-882). The School’s argument suggests that the application of the State Labor Relations Act to it would interfere with fundamental rights of parents of students to direct the religious education of their children. This argument is flawed and unpersuasive because, as we analyze the matter, the Supreme Court in
 
 Smith
 
 did not intend its hybrid exception to turn back on itself in circumstances such as this singularly generic First Amendment setting and circumstance
 
 (see, Matter of Hill-Murray Fedn. of
 
 
 *250
 

 Teachers v Hill-Murray High School, supra,
 
 487 NW2d, at 863 ["the rights of parents in the education of their children * * * are altogether different than the rights of a religiously affiliated employer with respect to the control of and authority over their lay employees”]). Rather, the Court expressly referenced the hybrid exceptional situations to free exercise settings in which other discrete constitutional protections are also implicated
 
 (Employment Div., Ore. Dept. of Human Resources v Smith, supra,
 
 494 US, at 881-882).
 

 In sum, the core teaching of
 
 Smith
 
 and the assemblage of associated authorities and lines of analysis cogently bring us to the conclusion that appellant’s free exercise claim, invoked with sweeping, threshold cloakage, cannot prevail. Whether individualized First Amendment eventualities and incursions may be legally cognizable in applied settings is not presented or properly before us, and we eschew any opinion, implication or drawing of inferences in that regard.
 

 IIL
 

 We turn now to the School’s Establishment Clause argument. Our conclusion is that the State Employment Relations Board’s legislatively invested jurisdiction does not violate appellant’s First Amendment rights in this regard.
 

 The Second Circuit Court of Appeals, faced with this precise issue, determined that the then-Labor Relations Board’s assertion of jurisdiction as between parochial schools and their lay teachers was valid. The court began by noting that "[t]he Supreme Court has made it clear, when discussing the Establishment Clause, that 'total separation is not possible in an absolute sense, [for s]ome relationship between government and religious organizations is inevitable’ ”
 
 (Catholic High School Assn. v Culvert,
 
 753 F2d 1161, 1166,
 
 supra
 
 [quoting
 
 Lemon v Kurtzman,
 
 403 US 602, 614]). The court further explained that " 'the line of separation, far from being a "wall,” is a blurred, indistinct, and variable barrier depending upon all the circumstances of a particular relationship’ ”
 
 (id.).
 
 Applying the United States Supreme Court’s test for ascertaining Establishment Clause violations, it concluded, that only the excessive entanglement prong was potentially implicated by the application of the State Labor Relations Act to the subject School (id., at 1166 [citing
 
 Lynch v Donnelly,
 
 465 US 668]). The court concluded that the "Board’s relationship with the religious schools over mandatory subjects of bargaining does not involve the degree of 'surveillance’ necessary to find exces
 
 *251
 
 sive administrative entanglement”
 
 (id.,
 
 at 1166). The court also noted that the Board’s supervision over collective bargaining involving secular terms and conditions of employment "is neither comprehensive nor continuing”
 
 (id.,
 
 at 1167). That is likewise so in this case and adds an important ingredient to our independent assessment and rejection of the all-encompassing posture and nature of the appellant’s claim.
 

 Catholic Bishop v National Labor Relations Bd.
 
 (559 F2d 1112,
 
 affd on other grounds
 
 440 US 490) is nevertheless heavily relied upon by the School in the instant case. Notably, in
 
 Catholic Bishop,
 
 the Seventh Circuit Court of Appeals held that the National Labor Relations Board could not exert jurisdiction over church-operated schools because of "the chilling aspect that the requirement of bargaining will impose on the exercise of the bishops’ control of the religious mission of the schools”
 
 (id.,
 
 at 1124). While the United States Supreme Court affirmed, it did so for different and narrower reasons (440 US 490,
 
 supra).
 
 It ruled on statutory construction grounds only. The Supreme Court stated that "in the absence of a clear expression of Congress’ intent to bring teachers in church-operated schools within the jurisdiction of the Board, we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses”
 
 (id.,
 
 at 507). Therefore, the Supreme Court expressly left open the "difficult and sensitive” First Amendment question we are faced with today in the instant case
 
 (id.; see, Catholic High School Assn. v Culvert, supra,
 
 753 F2d, at 1163).
 

 The Second Circuit Court of Appeals declined to follow the Seventh Circuit down its "slippery slope,” reasoning that "[i]t is a fundamental tenet of the regulation of collective bargaining that government brings private parties to the bargaining table and then leaves them alone to work through their problems”
 
 (Catholic High School Assn. v Culvert, supra,
 
 753 F2d, at 1167). The court further explained that "[t]he government cannot compel the parties to agree on specific terms,” rather, "[a]ll it can do is order an employer who refuses to bargain in good faith to return and bargain on the mandatory bargaining subjects, all of which are secular”
 
 (id.,
 
 at 1167;
 
 see, Matter of Hill-Murray Fedn. of Teachers v Hill-Murray High School,
 
 487 NW2d 857, 864,
 
 supra
 
 [holding the duty to bargain about hours, wages and working conditions constitutes a minimal responsibility that does not qualify as excessive entanglement]).
 

 
 *252
 
 In the present case, the Labor Relations Act imposes on all employers the obligation to engage in good-faith collective bargaining. Issues may include hours, wages, and working conditions. The School would exempt itself at the very threshold of the Act’s application on the ground that even the generally applicable employer-employee bargaining responsibility and neutral labor-management issues constitute excessive entanglement of government into the religious sphere of the School’s interests and operations. We disagree with the School’s theory that the mere potentiality for transgression is enough. It believes that State involvement in fostering negotiated terms and conditions of employment of its lay teachers necessarily implicates and intrudes upon religious concerns and rights of the School. This is not so and does not follow from the operation of the regulatory regimen.
 

 This tautological and sweeping contention, moreover, does not withstand close analysis. The Board’s oversight of the collective bargaining process does not generally, automatically or initially impinge upon the religious character, beliefs or First Amendment rights of the School. If, on individual application in the collective bargaining process or implementation, a line is crossed or the wall of separation is breached, that is the time and circumstance to assert and have adjudicated such arguably actual infringements.
 

 IV.
 

 Next, we consider the School’s particularized challenge of the Board’s order directing reinstatement of teacher Gaglione, who was discharged for "unchristian behavior.” The School claims that the Board disregarded the religious reason for the firing, thus exhibiting its inability to separate secular from religious grounds and illustrating the State’s excessive entanglement in the parent-school and teacher-student relationships at the School.
 

 Notably, "[t]he Board may — consistent with the First Amendment — protect teachers from unlawful discharge by limiting its finding of a violation of the collective bargaining agreement to those cases in which the teacher would not have been discharged 'but for’ the unlawful motivation”
 
 (Catholic High School Assn. v Culvert,
 
 753 F2d 1161, 1169,
 
 supra; see, National Labor Relations Bd. v Transportation Mgt. Corp.,
 
 462 US 393). Although "the First Amendment prohibits the State Board from inquiring into an asserted religious motive to determine whether it is pretextual,” the Board "is still free to determine,
 
 *253
 
 using a dual motive analysis, whether the religious motive was in fact the cause of the discharge”
 
 (Catholic High School Assn. v Culvert, supra,
 
 753 F2d, at 1168;
 
 see, DeMarco v Holy Cross High School, 4
 
 F3d 166, 171). Therefore, the Board "may order reinstatement of a lay teacher at a parochial school only if he or she would not have been fired otherwise for asserted religious reasons”
 
 (Catholic High School Assn. v Culvert, supra,
 
 753 F2d, at 1169).
 

 Applying the dictates of analysis, policy and relevant precedent to the state of this particular record and in the context of this part of the over-all controversy, we are satisfied that the Board’s direction of reinstatement of teacher Gaglione should be sustained. Support exists in the record that the conclusory characterization of the religious motive for the discharge enjoys no record support or even effort by the School to present evidence that Gaglione’s reinstatement implicates or engenders a religious entanglement.
 

 We also observe, in a general overview, that the Board’s procedural requirements and safeguards should prevent it from becoming enticed or embroiled in religious facets beyond the borders of its regulated responsibilities. Had the School tendered some proof at the appropriate, earliest, timely administrative stages to establish its claim that it could not reinstate Gaglione because, for example, he might be an inappropriate role model suitable to and consistent with the religious principles and mission of the School, the Board’s promulgated policies might have affected its remedial order in regard to this particular reinstatement, the only one particularly challenged directly in these judicial enforcement proceedings (see,
 
 Matter of St. John’s Preparatory School [Lay Faculty Assn.],
 
 49 SERB No. 51 [holding Board could not compel reinstatement of teachers which the.School had stated conflicted with the role of teachers in a Catholic school]). No such record or case was made in this regard as to this part of the longstanding and seemingly intractable conflict among the respective parties of this matter.
 

 In sum, the state of the pertinent law is that the Board cannot force labor parties to agree on specific terms; it can, however, compel them to try to negotiate in good faith. Such overarching authority and particularized supervision do not intrude on appellant’s free exercise or nonestablishment rights, to the point of stepping over First Amendment limitations. The First Amendment’s metaphorical wall of separation between church and State does not per se prohibit appropriate
 
 *254
 
 governmental regulation of secular aspects of a religious school’s labor relations operations. We neither breach the historically characterized wall nor make it higher or stronger by upholding the Board’s statutory authority here and by rejecting the School’s claim of an absolute, threshold exemption from its applicability.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.